No. 89-455

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

MARK YOVISH,
        Plaintiff and Respondent,

-vs-

UNITED SERVICES AUTOMOBILE ASSOCIATION,
        Defendant and Appellant.

FILED

JUN 2 6 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Dennis Tighe, Cure, Borer & Davis, Great Falls,
            Montana

        For Respondent:

            J. David Slovak, Urgin, Alexander, Zadick & Slovak,
            Great Falls, Montana

                            Submitted:  December 21, 1989

                            Decided:  June 26, 1990

Filed:

_____
              Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Mark Yovish, plaintiff and respondent, filed suit against United Services Automobile Association (USAA), alleging a wrongful denial of coverage. The Eighth Judicial District Court, Cascade County, sitting without a jury, found in favor of Yovish, awarding him compensatory damages and attorney fees. USAA appeals. We affirm in part and reverse in part.

We will discuss the following issues on appeal:

1. Whether USAA complied with the insurance policy provisions governing renewal so that the policy expired of its own terms prior to the automobile accident in question;

2. Whether the District Court abused its discretion by awarding attorney fees to Yovish.

USAA, an insurance company with a principal place of business in San Antonio, Texas, provides multi-line insurance coverage exclusively to military personnel and their dependents. Mark Yovish, a member of the United States Air Force, insured his 1983 Volkswagen Rabbit with USAA in January, 1983. Yovish paid monthly premiums on the Volkswagen in response to premium notices sent by USAA. The notices indicated the amount due on the policy.

Sometime around May, 1983, Yovish moved from California to Great Falls. He retained his policy with USAA and continued to pay his premiums in response to monthly premium notices sent by the company. In early 1984, he moved from one Great Falls location to another. Consequently, his February, 1984 premium notice was returned to USAA by the post office. This notice indicated that the policy would be renewed for six months beginning February 1, 1984. Although Yovish did not receive the notice or pay the premium until approximately February 10, 1984, USAA backdated the coverage to the beginning of the month, leaving the six-month policy term running from February 1 to August 1, 1984. About this same time, Yovish also received a renewal declarations page to attach to his policy. The declarations page displayed a policy period of February 1 through August 1, 1984.

2

As USAA did not have any local agents, Yovish occasionally contacted the company by telephone to conduct business or obtain general rate and coverage information. In mid-February, 1984, he called the company for premium quotes. In April, 1984, after securing rental insurance coverage with Farmers, he called USAA to cancel his rental insurance policies.

On June 9 or 10, 1984, he again called the company. At trial, the parties disputed the substance of this conversation. Yovish maintained that he called USAA in June simply to obtain rate and coverage information. USAA, on the other hand, contended that he told the company not to renew the policy in August because he was insuring the automobile with Farmers. Yovish did not receive any written confirmation of the phone call from USAA nor did he receive a notice of non-renewal or cancellation. In fact, the last written notice Yovish received from USAA consisted of a May, 1984 premium notice indicating that, due to the cancellation of his rental policies, the balance on his auto policy was fully paid. On August 5, 1984, Yovish sideswiped a parked car on a residential street in Great Falls. He admitted liability, and phoned USAA the following day to report the accident. A few days later, USAA denied coverage of the accident, maintaining that Yovish's policy had expired on August 1, 1984, the last day of the six-month policy period. USAA based its denial on the substance of the June telephone conversation.

On the advice of counsel, Yovish forwarded a $408 check to USAA on August 10, 1984 in an attempt to retain coverage from August 1, 1984. The check was cashed by the company but the money was returned to Yovish in late August.

Total damages incurred in the accident amounted to $3,634-- $1,843 for Yovish's vehicle and $1,791 for the other car. After USAA refused to accept the claim, Yovish was forced to take out a $3,000 loan at 10 percent interest to cover the damages.

On April 25, 1985, Yovish instituted suit against USAA, asserting that USAA's rejection of the claim and alleged failure to comply with statutory notice provisions governing insurance

3

companies constituted oppressive and malicious conduct. On December 23, 1986, the District Court denied USAA's motion for summary judgment. A bench trial commenced on December 31 of that year. On February 24, 1989, over two years later, the court issued findings of fact, conclusions of law and order, awarding Yovish $3,384 in compensatory damages (total damages of $3,634 offset by $250 deductible) and $322 in interest. The court denied Yovish's prayer for punitive damages but granted his request for attorney fees. On May 4, 1989, the court denied USAA's motion to amend the judgment with respect to the award of attorney fees. Following a hearing, the court awarded attorney fees in the amount of $8,703. USAA appealed to this Court.

USAA argues that it fully complied with both the policy provisions and statutory law governing renewal and non-renewal of auto insurance policies. Therefore, USAA maintains, it was not required to provide coverage for the car accident of August 5, 1984, because the policy had expired of its own terms on August 1, 1984 due to Yovish's failure to pay the renewal premium.

Montana's insurance notice statutes provide that an insurer may not cancel or refuse to renew an insurance policy without furnishing adequate notice of such intent to the insured. Sections 33-23-212 and 33-23-214, MCA. The statutes were enacted in order to prevent lapses in insurance coverage by supplying insureds with sufficient time to obtain insurance elsewhere. See Cantrell v. Benefit Ass'n of Ry. Employees, 136 Mont. 426, 431, 348 P.2d 345, 348 (1960). Preventing lapses in insurance coverage assures that drivers do not travel the state's highways without the benefit of insurance protection.

Many insurance policies possess similar notice provisions. As long as the terms in the policy regarding notice do not restrict the rights of Montana citizens given by the insurance notice statutes, the terms do not defeat public policy and are therefore valid. Because an insurance policy constitutes a contract between the parties, this Court will interpret the terms of the policy according to contract law. Universal Underwriters Ins. Co. v.

4

State Farm Mut. Ins. Co., 166 Mont. 128, 135, 531 P.2d 668, 673 (1975). However, if a contractual term restricts the rights of the insured, we will construe the contract by looking to the statutes governing insurance law.

In the present case, the relevant policy provisions do not restrict the statutory rights of the insured. Therefore, we shall decide this case by construing the terms of the policy.

The applicable policy terms provided as follows:

**Non-renewal.** <u>If we decide not to renew or continue this policy, we will mail notice to the named insured</u> shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

**Automatic Termination.** <u>If we offer to renew or continue</u> and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer. (Emphasis added.)

The policy was unambiguous. The clause concerning automatic termination required USAA to offer to renew the policy. Yovish's obligation to pay the premium was contingent upon USAA's offer to renew. Once USAA offered to renew the policy, Yovish could accept the offer by paying the renewal premium. The policy could automatically expire only if USAA extended an offer of renewal to Yovish and Yovish rejected that offer by failing to pay the premium when due.

USAA acknowledges that it failed to send Yovish any written offer of renewal. It neglected to forward Yovish either a premium notice or a renewal declarations page, as had been its practice in previous dealings with Yovish. Because USAA failed to offer to renew the policy, it failed to comply with the terms of the automatic termination clause. Thus, it cannot rely on that clause for the proposition that the policy automatically expired on August

1, 1984, the final day of the policy period.

USAA also neglected to mail Yovish notice of its intent not to renew as mandated by the non-renewal clause. Nevertheless, USAA argues that it did not need to mail Yovish written notice of non-renewal because Yovish, not USAA, had decided not to renew the policy.

USAA bases this argument on the substance of the disputed June, 1984 phone call. The District Court, however, found that Yovish called USAA in June, 1984, simply to obtain rate and coverage information and that he did not inform the company during the conversation that he did not intend to renew or otherwise cancel the policy. These findings are not clearly erroneous.

Yovish testified that the June telephone conversation was extremely brief and that it concerned only ballpark estimates about rates and coverages. He maintained throughout his testimony that he did not request cancellation of his coverage with USAA nor did he inform USAA that he did not wish to renew his coverage after the next expiration date. His testimony was supported by the deposition testimony of his roommate, who was present during the telephone conversation in question.

Yovish's testimony was also supported by his conduct. The record indicates that he had always taken great care to insure his property. He cancelled his USAA rental insurance policies in April, 1984, only after securing other insurance. Yet he did not obtain other insurance after the June, 1984 phone call, as would have been his normal course of conduct had he not intended to renew his coverage with USAA. Furthermore, he contacted USAA immediately after the accident, indicating that he believed that he was still covered by that insurer.

Carole Thomas, the USAA employee who took the June phone call, disputed Yovish's testimony. Thomas contended that Yovish could not have requested or received rate information because the computers were down at the time he called. She further testified that he informed her that he would not be renewing his automobile coverage, that he would be insuring with Farmers instead.

USAA contends that Thomas's testimony was inherently more credible than Yovish's because Thomas's statement was supported by a written memorandum of the telephone conversation. This is not so. Although a written memorandum may lend credence to a witness's testimony, it is not necessarily more reliable than another witness's verbal recollection of an event.

The written memo introduced by USAA was not entirely free of errors. The memorandum possessed at least two inaccuracies, the wrong date and Yovish's incorrect insurance status. The District Court could reasonably have questioned both the trustworthiness of the memo as well as Thomas's reliability when she testified that she incorrectly assumed that Yovish was a dependent of a subscriber rather than a subscriber in his own right due to the immaturity of his voice. The court could also have viewed Thomas's ability to recall the conversation accurately with a degree of skepticism considering the fact that she received between 40 and 50 telephone calls per shift.

The present case is particularly appropriate for limited review. The parties hotly contested the substance of the June telephone conversation, thus calling the credibility of the witnesses into question. The District Court had the opportunity to listen to the testimony of both witnesses before making its decision, a decision that is not clearly erroneous. We will not second guess its judgment.

Because the District Court found that Yovish had not communicated to USAA a desire not to renew his policy, USAA was compelled to comply with the policy terms governing renewal. The policy required USAA to send Yovish written notice of non-renewal. USAA admits that it neglected to send any such notice.

Where the insurer has failed to comply with the policy terms regarding renewal and notice of non-renewal, the insurance policy does not expire of its own terms and the insurer cannot deny coverage to the insured for an accident that occurs after the renewal date. Accord Sausen v. American Family Mut. Ins. Co., 360 N.W.2d 565 (Wis. Ct. App. 1984); Barbara Corp. v. Bob Maneely Ins.

Agency, 484 A.2d 1292 (N.J. Super. App. Div. 1984); National Automobile and Casualty Ins. Co. v. California Casualty Ins. Co., 188 Cal. Rptr. 670 (Cal. Ct. App. 1983); Prudential Property & Casualty Ins. Co. v. Pritchett, 313 S.E.2d 706 (Ga. Ct. App. 1983); Shore v. Coronet Ins. Co., 288 N.E.2d 887 (Ill. App. Ct. 1972); Nationwide Mut. Ins. Co. v. Davis, 171 S.E.2d 601 (N.C. Ct. App. 1970). Although the cases cited above refer to failure to comply with statutory notice provisions, the same reasoning applies to failure to comply to the contractual provisions in this case, where the policy provided that automatic termination was contingent upon an offer of renewal extended by the insurance company and that the insurer was required to supply the insured with written notice of non-renewal.

USAA next argues that the District Court abused its discretion by awarding attorney fees to Yovish. USAA does not dispute the reasonableness of the amount of attorney fees, for it stipulated that the $8,703 fee was reasonable. USAA does contest the propriety of any attorney fee award at all in this case.

Generally, attorney fees may not be awarded to a prevailing party in the absence of a specific statute or a contractual provision granting fees. Martin v. Crown Life Ins. Co., 202 Mont. 461, 469, 658 P.2d 1099, 1104 (1983). This action presents neither a statutory nor a contractual basis for an award of attorney fees. Nor does it fall within one of the narrow exceptions to the general rule regarding attorney fees. Therefore, we agree that the District Court abused its discretion in awarding fees.

We have approved awards of attorney fees in the absence of a specific statute or contractual provision granting the right to attorney fees in cases where an insurer has breached its obligation to defend an insured. Lindsay Drilling & Contracting v. United States Fidelity & Guar. Co., 208 Mont. 91, 676 P.2d 203 (1984); Truck Ins. Exch. v. Wolstad, 212 Mont. 418, 687 P.2d 1022 (1984); Home Ins. Co. v. Pinski Bros., Inc., 160 Mont. 219, 500 P.2d 945 (1972). The present case, however, is not a case where an insurer has wrongfully refused to defend an insured but where an insurer

8

has wrongfully refused to provide coverage to an insured. Although the distinction may be slight, we hesitate to expand the exception to the general rule without legislative authority. See <u>Martin</u>, 202 Mont. at 469, 658 P.2d at 1104; Tynes v. Bankers Life Co., 224 Mont. 350, 369, 730 P.2d 1115, 1127 (1986).

We understand that the failure to award attorney fees in cases such as the present one may result in circumstances where the entire compensatory award is consumed by the costs of litigation. We also recognize that the failure to grant attorney fees may force insureds with modest claims to simply accept an insurer's erroneous denial of coverage. Nonetheless, the legislature, not the courts, must remedy the wrongs created by this situation.

Affirmed as to the award of compensatory damages. Reversed as to the award of attorney fees.

_William E Hunt Sr_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Diane G Barz_

_John C. Sheehy_

_R. C. McDonough_

_Justices_