No. 92-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PAT M. GOODOVER,

      Plaintiff and Respondent,

-vs-

LINDEY'S INC., and the ESTATE
OF WILLIAM C. FORREST, deceased,
and the unknown heirs and unknown
devisees of any Defendant above-
named who may be deceased; et al.,

      Defendants and Appellants.

**FILED**

DEC 1 0 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

          Paul Neal Cooley, Skelton & Cooley, Missoula,
          Montana

      For Respondent:

          John Larson, Attorney at Law, Missoula, Montana
          Jerome T. Loendorf, Harrison, Loendorf & Poston,
          Helena, Montana


               Submitted on Briefs:  September 24, 1992

                       Decided:  December 10, 1992

Filed:

                                                                         Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Appellant Lindey's, Inc. appeals from an order of the District Court of the Fourth Judicial District, Missoula County, awarding damages for loss of use of property, supplemental relief, costs and attorney's fees. Lindey's also appeals from a subsequent order setting the amount of attorney's fees and costs. We affirm in part and reverse in part.

Appellant presents fourteen issues on appeal. We consolidate these issues as follows:

1.) Did the District Court err in denying Lindey's request for a jury trial on the issue of damages?

2.) Did the District Court err in its award of damages to enforce the 1987 determination of the boundary between Lots 1 and 2?

3.) Did the District Court err in ordering Lindey's to pay for the transcription of a video-taped deposition?

4.) Did the District Court err in admitting hearsay evidence of a reduction in the taxable value of Goodover's property?

5.) Can Lindey's raise issues that were raised or should have been raised in an earlier appeal?

6.) Did the District Court err in awarding costs to Goodover?

7.) Did the District Court err in awarding attorney's fees to Goodover?

The case before us is the third appeal stemming from a protracted and bitter boundary dispute between two property owners in Seeley Lake. The facts regarding the earlier stages of the

2

litigation are detailed in Goodover v. Lindey's, Inc. (1988), 232 Mont. 302, 757 P.2d 1290 [Goodover I] and Goodover v. Lindey's, Inc. (1990), 246 Mont. 80, 802 P.2d 1258 [Goodover II]. Additional facts will be set forth as appropriate in the discussion of the issues. Briefly, respondent Pat M. Goodover (Goodover) owns Lot 2 of the Seeley Lake Shore Sites in Missoula County. Appellant Lindey's, Inc., (Lindey's) owns adjoining Lot 1. In 1984, Goodover filed an action for quiet title and declaratory judgment to locate the disputed northeast corner marker of the lots. After a bench trial in 1987, the District Court issued findings of fact, conclusions of law and judgment which established the boundary line. The court also bifurcated the issue of damages for later determination. This Court affirmed in Goodover I. Shortly before the 1987 trial, Lindey's constructed a restroom facility and installed two underground fuel storage tanks in the disputed area. After we affirmed the boundary determination, it was clear that the restroom and a fence encroached on Goodover's property; although the storage tanks lay below the surface, the position of the air vents indicated an additional encroachment.

After failed negotiations to remove the encroachments, Goodover moved the court for an order requiring Lindey's to show cause why it should not be compelled to remove the encroachment. Following a hearing, the District Court ordered Lindey's to move the restroom at least three feet from the boundary and to locate the underground storage tanks. It also expressly reserved jurisdiction over the issue of damages. Lindey's appealed the District Court's jurisdiction to fashion such supplemental relief.

3

The District Court established a $5,000 bond on appeal to satisfy any damages resulting from Lindey's encroachments.

On December 18, 1990, this Court affirmed the District Court's decision on supplemental relief in Goodover II. After the parties received that decision, Goodover promptly filed a motion for forfeiture of the appeal bond.

In March of 1991, the District Court ordered Lindey's to submit a work plan detailing the removal of the restroom and the location of the underground storage tanks and set a July 20, 1991, deadline for all work to be completed. Lindey's submitted a report locating the tanks, finding them within three feet of the established boundary. On July 24, 1991, Lindey's moved the restroom, but left the concrete foundation encroaching on Goodover's property.

After numerous continuances, the District Court held a hearing on damages on August 2, 1991. On August 5, 1991, Goodover filed a petition for removal of the tanks, asserting that although they did not lie on Goodover's property, they violated local fire codes requiring underground storage tanks to be set back three feet from any boundary. On January 2, 1992, the District Court entered findings of fact, conclusions of law and order on damages. Finally, on February 25, 1992, the District Court ordered Lindey's to pay Goodover $10,761.86 in attorney's fees and $524.45 in costs. Lindey's appeals from both orders.

I.

Did the District Court err in denying Lindey's request for a jury trial on the issue of damages?

4

Goodover initially filed an action for quiet title and declaratory judgment to locate the boundary between the lots. In his second amended complaint, Goodover added a prayer for damages of $500. In answering the second amended complaint on July 30, 1985, Lindey's did not request a jury trial. Instead, it requested a jury trial in its response to Goodover's motion to forfeit the appeal bond on January 25, 1991, nearly six years later. The District Court denied Lindey's request for a jury trial.

Lindey's argues that because Goodover's second amended complaint did not pray for damages over $500 (as were eventually awarded), it had no notice of the potential for larger damages. Therefore, it argues that it was unaware of the need to request a jury trial in its answer to the second amended complaint, in violation of its due process rights. We disagree.

Although Lindey's claims it had no notice of the potential for greater damages, each count of the second amended complaint contains a request for "such other and further relief as the court may seem [sic] appropriate." Furthermore, Lindey's cites no authority for its argument. Rule 38(b) of the Montana Rules of Civil Procedure clearly provides:

> Any party may demand a trial by jury of any issue triable by right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

Lindey's should have demanded a jury trial in its answer to the second amended complaint. Failure to serve this demand constitutes a waiver of trial by jury. Rule 38(d), M.R.Civ.P. Lindey's waived

5

its right to a jury trial by failing to comply with the requirements of Rule 38(b).

Lindey's also argues that Goodover should have been required to amend his complaint to request larger damages, thereby giving Lindey's the opportunity to request a jury trial. This argument is without merit, because even if Goodover had amended the complaint to include a request for more money damages and coercive relief, Lindey's previous waiver of a trial by jury would not have been revoked. Rule 38(d), M.R.Civ.P., provides in pertinent part:

A waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Each damage claim that Lindey's finds objectionable arose out of the same occurrence in the second amended complaint, the disputed boundary between Lots 1 and 2. The District Court did not err in denying Lindey's untimely motion for a trial by jury.

II.

Did the District Court err in its award of damages to enforce the 1987 determination of the boundary between Lots 1 and 2?

At the hearing on damages, Goodover called Ken Hayes, an area realtor, to testify as an expert witness. Hayes testified that the value of Goodover's lot was $100,000 and the rental value of the lot during the rental season was $350 per week. He also testified that the presence of the encroachments decreased the value of the lot by 10 to 20%.

Goodover testified that the value of his property ranged from $150,000 to $175,000. Goodover also testified that the County Tax

6

Appeals Board had reduced his appraised property value by $10,000 due to the ongoing litigation.

Lindey's real estate expert, Jeff Macon, testified that an undeveloped campsite in the Seeley Lake area rented for $160 per month, but acknowledged that a lot with amenities similar to Goodover's would yield higher rentals. He also testified that the encroachments would not have a substantial effect on sales price. Clarence Rich, a Seeley Lake real estate agent, also testified for Lindey's. He testified that the underground tanks would increase the sales value of adjacent property. He admitted, however, that his experience with such appreciation occurred fifteen years ago.

Michael Pat Goodover, Jr., Goodover's son, also testified as an expert realtor. As a member of the Montana Association of Realtors Risk Reduction Task Force, he concluded that the underground storage tanks decreased the sales value of the adjacent lot.

The District Court determined that the reasonable rental value of Goodover's property was $350 per week and that the encroachments caused a 10% reduction in the value of the lot. Therefore, the court calculated that 10% of $350 yielded damages of $35 per week for loss of use of property. The court awarded $35 per week from August 1986 through August 1991, arriving at a total damage award of $9,100 for loss of use of property, and ordered $2,540 of that amount forfeited from the appeal bond. The court also awarded $500 in supplemental relief for the fire code violation and $350 per week coercive damages for every week the encroachments remained on the property after the July 20, 1991, deadline for removal.

7

Lindey's raises a profusion of related arguments concerning the District Court's determination and computation of damages. Specifically, Lindey's claims that the District Court erred in awarding damages in excess of those in the complaint and supplemental petition, that it admitted and relied on expert testimony in error, and that it erroneously computed the damages. We address these three claims individually.

First, Lindey's claims that the District Court erred in awarding damages beyond those requested in the second amended complaint and the petition for supplemental relief, thereby denying it "fair notice" of Goodover's damages. This argument is without merit. Goodover brought this action to quiet title and for declaratory relief. The Uniform Declaratory Judgments Act provides for supplemental relief to enforce a declaratory judgment. Section 27-8-313, MCA, reads:

> Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a declaratory judgment or decree to show cause why further relief should not be granted forthwith.

In this case, Goodover filed a motion to show cause, requesting the court to order Lindey's to remove the encroachments. Lindey's concedes that this motion served as a supplemental petition under § 27-8-313, MCA. The District Court issued the order to show cause pursuant to the statute and held a hearing. In a corrective order issued after the hearing, the District Court expressly reserved continuing jurisdiction over the issue of

8

damages. As we said in Goodover II, this statute enables the district court to retain jurisdiction and grant further relief as it deems necessary and proper to enforce the declaratory judgment. 246 Mont. at 82, 802 P.2d at 1260 (emphasis added). We held that in fashioning the remedy, the court is not bound by relief requested in the complaint but may order any relief needed to effectuate the judgment. Id. In this case, the District Court retained jurisdiction to grant relief necessary to enforce its judgment under the Uniform Declaratory Judgments Act and its earlier orders. The District Court correctly determined that monetary damages and coercive relief were necessary to provide complete relief to Goodover.

Furthermore, Rule 54(c), M.R.Civ.P., states that every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings. Goodover's failure to request specific money damages or coercive damages does not hinder the District Court's ability to order any relief necessary to effectuate its judgment. We hold that the District Court did not err in awarding damages in excess of those requested in the complaint and petition for supplemental relief.

Second, Lindey's objects to the expert testimony relied on by the District Court in computing damages. Lindey's claims that Goodover's expert, Hayes, was not qualified as an expert and should not have been allowed to testify about property values. The trial court's determination that a witness is qualified to testify as an expert will not be disturbed absent a showing of abuse. Price

9

Bldg. Service Inc. v. Christensen (1985), 215 Mont. 372, 375, 697 P.2d 1344, 1346. Hayes was a licensed realtor with over fifteen years' experience in selling and renting property in Missoula County. The District Court did not abuse its discretion in allowing Hayes to testify as an expert.

Lindey's further argues that the trial court erred in choosing Hayes' valuation over those of its experts, Macon and Rich. The trial court is free to select and reject appraisal values, so long as there is substantial credible evidence in support of the value selected. In re Marriage of Williams (1986), 220 Mont. 232, 242, 714 P.2d 548, 554 (citations omitted). In this case, Hayes' testimony provided substantial credible evidence to support the court's valuations. We hold that the District Court did not err in adopting the values testified to by Hayes.

Third, Lindey's challenges the amount of damages awarded for loss of use of property, coercive relief, and the fire code violation. Lindey's begins by arguing that the District Court erred in computing the damages for loss of use of property. The detriment caused by the wrongful occupation of real property is deemed to be the value of the use of the property for the time of such occupation. Section 27-1-318, MCA. Reasonable rental value is a proper estimation of the value of use of property. Smithers v. Hagerman (1990), 244 Mont. 182, 191, 797 P.2d 177, 183; Pritchard Petroleum Co. v. Farmers Co-Op (1947), 121 Mont. 1, 7, 190 P.2d 55, 58. Lindey's argues that the District Court should have taken into account the appreciation of the property during litigation when determining reasonable rental value. Lindey's

10

cites no authority for its position and, in any event, presented no evidence on the effect of appreciation on rental value. The District Court did not err in its computation of reasonable rental value of the property encroached upon by Lindey's.

Lindey's additionally argues that the District Court should not have awarded damages for loss of use for the winter months because Goodover did not use the property in the winter. Therefore, Lindey's contends, the court could not have attributed any damages to the appeal bond prior to the second appeal because that period of time fell during the winter. Based on Hayes' testimony, Lindey's asserts that Goodover used his property for only fourteen weeks in the summer of 1990. The transcript reads:

Q   Now what is the rental season up in Seeley Lake, generally speaking?

A   From May through September.

Q Okay.  And approximately how many weeks per summer if you –

A   Probably about 14 weeks would be prime time.

Hayes' testimony does not support Lindey's factual contention. Rather, it refers to rental property in Seeley Lake **in general**, not Goodover's property in 1990; it also refers to "prime time" rental season only.

Moreover, the encroachments continued year-round. Section 27-1-318, MCA, authorizes damages for the wrongful occupation of property for the time of the <u>wrongful occupation</u>.  The District Court did not err in applying the reasonable rental figure to each week the encroachments existed.

Lindey's argues that the amount of coercive damages the

11

District Court awarded to Goodover was in error. As discussed in Goodover II, coercive damages are a proper tool to enforce a declaratory judgment. 246 Mont. at 82, 802 P.2d at 1260. Here, the coercive damages managed to accomplish what five years of litigation could not--remove the encroachments. The District Court did not err in awarding $350 per week for every week the encroachments remained on Goodover's property.

Finally, Lindey's claims that by awarding $500 in supplemental relief for the fire code violation and $35 per week for loss of use of property, the District Court put Lindey's in "double jeopardy." We disagree. We note initially that double jeopardy is a term of art not applicable to a civil proceeding. We assume Lindey's is arguing that the court awarded double damages for the same violation. That is not the case here.

The District Court computed the award of $35 per week by figuring the loss of use of property caused by the encroachments over the five year period. The court also awarded $500 in supplemental relief for the fire code violation in lieu of removing the underground storage tanks. The underground tanks posed possible environmental and fire hazards that affected the property value separately and distinctly; Hayes, Rich and Goodover, Jr. all testified as to the impact of the storage tanks on the value of the real estate. The court is not bound by the opinion of a particular party or expert but remains free to adopt any reasonable valuation that is supported by the record. In re Marriage of Dzivi (1991), 247 Mont. 165, 167, 805 P.2d 567, 568. The District Court did not err in awarding a separate $500 damage award for the underground

12

storage tanks.

In sum, the District Court made extensive findings of fact regarding damages and how they were computed. These findings are not clearly erroneous under the three-part "clearly erroneous" test we enunciated in Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. First, the testimony of Hayes, Goodover, Rich and Goodover, Jr. provides substantial credible evidence supporting the District Court's valuations. In addition, the District Court did not misapprehend the effect of the evidence. Finally, we are not left with a definite and firm conviction that a mistake has been made. We hold that the District Court did not err in its determination and award of damages.

III.

Did the District Court err in ordering Lindey's to pay for the transcription of a video-taped deposition?

Gary Johnson testified for Lindey's at a hearing on March 14, 1991. He was unable to complete his testimony that day and the parties agreed to a perpetuation deposition pursuant to Rule 30, M.R.Civ.P., to allow Johnson to complete his testimony. The deposition was taken a few days later. Goodover subsequently moved the court to order Lindey's to provide a written transcript of the video-taped deposition; the District Court granted the motion on April 8, 1991. Lindey's filed its objection to Goodover's motion on April 10, 1991. Lindey's now argues that the District Court violated Rule 2 of the Uniform District Court Rules in issuing the order.

Rule 30(h)(1)(c), M.R.Civ.P., specifically allows the court,

13

upon motion for good cause, to order the party who took the video deposition to furnish a transcript of that deposition at that party's expense. The expert testified on Lindey's behalf, and Lindey's took the deposition for the convenience of its expert. Also, Lindey's original objection to Goodover's motion was not based on an asserted violation of U.D.C.R. 2. This Court will not address on appeal an issue not presented to the district court. Wyman v. DuBray Land Realty (1988), 231 Mont. 294, 299, 752 P.2d 196, 200. The District Court did not err in ordering Lindey's to pay for the transcription of Gary Johnson's video-taped deposition.

IV.

Did the District Court err in admitting hearsay evidence of a reduction in the taxable value of Goodover's property?

Lindey's claims that the District Court erred by allowing Goodover to testify to inadmissible hearsay. When asked whether he had approached the local County Tax Appeal Board about the value of his lot, Goodover responded "[t]he Tax Appeal Board ruled during the legislation [sic], the legal involvement, they would reduce my property taxation value by $10,000.00." Lindey's objected that the answer required hearsay, and the District Court overruled the objection.

Under Rule 801 of the Montana Rules of Evidence, hearsay is defined as a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 602, M.R.Evid., states:

> A witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence

14

to prove personal knowledge may, but need not, consist of
the witness' own testimony.

The term "hearsay," as used in the law of evidence, signifies all
evidence which is not founded upon the personal knowledge of the
witness from whom it is elicited. State v. Sharbono (1977), 175
Mont. 373, 387, 563 P.2d 61, 69, quoting State v. Crean (1911), 43
Mont. 47, 59, 114 P. 603, 607. Goodover's testimony established
his personal knowledge of the reduction. He personally participa-
ted in the tax reduction proceeding and has first-hand knowledge of
the reduction in the taxable value of his property. Therefore, his
testimony does not constitute hearsay. We hold that the District
Court did not admit hearsay evidence of the reduction in the
taxable value of Goodover's property.

V.

Can Lindey's raise issues that were raised or should have been
raised in an earlier appeal?

Lindey's claims the District Court's Conclusion of Law XIII is
not supported by the record. The conclusion reads:

Current Fire Marshall regulations in effect since 1985,
require a set back of at least three feet from property
boundaries for underground fuel storage tanks. (Source,
Uniform Fire Code 79.601(a), Testimony of Sisk.)

This Conclusion of Law is a verbatim repetition of Conclusion of
Law VIII in the District Court's February 23, 1990 order appealed
to this Court in Goodover II. Having failed to raise the issue in
Goodover II, Lindey's cannot now raise the sufficiency of the
evidence to support this conclusion. Downs v. Smyk (1982), 200
Mont. 334, 343, 651 P.2d 1238, 1242.

15

Similarly, Lindey's attempts to resurrect the argument that the equitable doctrine of laches should defeat Goodover's claim of encroachment. As Goodover points out, a careful look at Lindey's appellate brief in Goodover II reveals the same argument. We stated in Goodover II:

> Lindey's raises a myriad of issues in an attempt to relitigate the boundary-line question. We refuse to examine these arguments, however, because the boundary-line issue was reviewed and finally decided during the first appeal to this Court. The District Court's determination of the boundary line is thus res judicata and cannot be reconsidered on this appeal.

246 Mont. at 82, 802 P.2d at 1260. Lindey's again argues that Goodover's alleged delay in acquiring a survey should bar the claim of encroachment. This argument has no more merit now than it did when Lindey's raised it in Goodover II. All issues relating to the boundary and the encroachments are res judicata.

VI.

Did the District Court err in awarding costs to Goodover?

Lindey's makes several objections to the bill of costs submitted by Goodover and approved by the District Court. Lindey's claims the District Court erred by awarding $570 to Goodover for expert witness fees. We agree.

Legal fees of witnesses, plus mileage, are allowable statutory costs under § 25-10-201, MCA. By statute, an expert witness is a witness and receives the same compensation as a witness. Section 26-2-505, MCA. The statutory witness fee in a civil case is limited to $10 per day. Section 26-2-501, MCA. A party may pay an expert witness any fee he or she chooses, but a district court cannot award costs in excess of $10 per day per witness. Witty v.

16

Pluid (1986), 220 Mont. 272, 274, 714 P.2d 169, 171. From our review of the record of the hearing, Hayes, Gregory Martinsen and Goodover, Jr., each testified one day for Goodover; thus, the total witness fee awardable as costs for those witnesses is $30. We hold that the District Court erred in the amount of witness fees awarded as costs to Goodover.

Lindey's also asserts that the District Court erroneously awarded Goodover the costs of the survey used to prepare the map that located the storage tanks. We disagree. This map was introduced through Goodover's expert Martinsen as Plaintiff's Exhibit 1. Under § 25-10-201(8), MCA, reasonable expenses for making maps are allowed if required and necessary for use at trial or hearing. Lindey's claims that Goodover's exhibit was not necessary because Lindey's submitted a report locating the tanks in July. However, Goodover's survey is more detailed than, and different in result from, Lindey's report. Expenses incurred in preparing maps for the express purpose of explaining the factual situation to the court are allowed as recoverable costs. Funk v. Robbin (1984), 212 Mont. 437, 449, 689 P.2d 1215, 1222. The District Court did not err in awarding Goodover $524.45 in costs for reasonable expenses in preparing the map.

VII.

Did the District Court err in awarding attorney's fees to Goodover?

Lindey's argues that the District Court erred in awarding Goodover attorney's fees. We agree.

To support its award of attorney's fees, the District Court

17

made the following findings of fact in its January 2, 1992, order:

[XXXI] Beginning with the hearings held on supplementary relief, counsel for Lindey's, Inc., has attempted to interject the relitigation of the original boundary issue, exhibits related to the relitigation of the boundary issue, and other extraneous matters rather than to address the issues before the Court. Again, based on this Court's extensive experience as a Trial Judge, these efforts were transparent attempts to vex, obstruct, and delay the proceedings in this case.

[XXXII] On April 8, 1991, this Court issued an Order requiring the transcription of a deposition of one of Lindey's, experts. The strategy employed by Lindey's, Inc., and its counsel to delay and vex compliance with this valid Court Order are as follows:

A. Telling the private Court Reporter who reported at this deposition that they would not guarantee payment.

B. Filing a premature Writ of Certiorari to the Montana Supreme Court which was dismissed.

C. Maintaining that while they did not possess the tape, they had not lost the video tape which the Court Reporter's notes indicated had been delivered to them . . . and which the Court records indicate had never been filed.

D. Only agreeing to guarantee payment for the video tape after a Rule 37(b) Motion had been filed by Plaintiff's counsel and a hearing date set.

E. Finally acknowledging that the video tape was in the possession of Mr. Lindemer in late July 1991.

F. The deposition was finally transcribed on July 31, 1991. A delay caused exclusively by Lindey's actions of approximately four months.

G. These actions by Lindey's, Inc., have also delayed the determination of the Contempt Issue which was submitted to this Court on June 14, 1991, but couldn't be decided until the transcript was prepared.

. . .

18

[XXXV] Based on the slow progress made in this case, due in large measure to Defendant Lindey's frequent attempts to relitigate this case, both at the District Court and Supreme Court level, the number of extraneous exhibits and issues which this Court often admitted over objection, despite their minimal relevance, materiality and/or weight, the Court finds that in this particular case, the exercise of its equitable powers to award the Plaintiff its reasonable attorney's fees is justified.

[XXXVI] Such actions by Lindey's during the pendency of boundary litigation and its subsequent refusal to move the encroachments even after the boundary dispute was resolved are actions taken in bad faith and with malice and are the factual basis for the Court's award of attorney's fees to Plaintiff.

The District Court concluded that these factual circumstances justified the exercise of its equitable powers and awarded Goodover reasonable attorney's fees.

The longstanding rule in Montana is that, absent statutory or contractual authority, attorney's fees will not be awarded. Bitney v. School Dist. No. 44 (1975), 167 Mont. 129, 137, 535 P.2d 1273, 1277; Ehly v. Cady (1984), 212 Mont. 82, 100, 687 P.2d 687, 696; Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 505, 605 P.2d 1107, 1112. This rule, also called the American Rule, prohibits fee shifting in most cases. Alyeska Pipeline Service Co. v. Wilderness Society (1975), 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141, 147. The District Court did not rely on any statute or rule of civil procedure in its award of attorney's fees. Instead, the District Court first relied on a United States Supreme Court decision that discussed the powers of the federal district court to assess attorney's fees as an appropriate sanction under the "bad faith" exception to the general rule. The District Court then concluded that its general equity power to make a party whole

19

in some cases included the right to award attorney's fees, and that Lindey's bad faith and malicious behavior towards Goodover merited such an award.

In isolated instances, a district court may award attorney's fees to make an injured party whole under its equity powers. Foy v. Anderson (1978), 176 Mont 507, 511-12, 580 P.2d 114, 116-17; Holmstrom Land Co. v. Hunter (1979), 182 Mont. 43, 48-49, 595 P.2d 360, 363; Stickney v. State, County of Missoula (1981), 195 Mont. 415, 418, 636 P.2d 860, 862. We have invoked the "equitable" exception to the general rule infrequently, however, and only in cases with particularly limited facts.

In Foy, Eggan and Foy were passengers in a car struck from the rear by Anderson. Eggan sustained only minor injuries and did not file a claim against Anderson. Anderson filed a declaratory action against his insurer and sought to bring in Eggan as a third party, alleging that Eggan had asserted a claim against him. We held that because Eggan asserted no claim against Anderson, and she was forced to hire an attorney to write and argue her motion to dismiss through no fault of her own, she would not be made whole without an award of attorney's fees. 176 Mont. at 512, 580 P.2d at 117.

In Holmstrom, the district court issued an order to the water commissioner, defendant Hunter, to charge all water flowing from Newlan Creek to Holmstrom. Holmstrom refused to pay and Hunter padlocked his headgates. Holmstrom then brought a civil action against Hunter. We held that Hunter acted pursuant to a court order, was forced to retain counsel, and as a matter of equity required an award of attorney's fees. 182 Mont. at 48, 595 P.2d at

20

363. We reasoned that if water commissioners were required to defend suits out of their personal funds for suits brought against them for their official acts, no one would be willing to serve as a water commissioner. Comparing the case to _Foy_, we stated, "[j]ust as Anderson had no reason or justification for dragging Eggan into the lawsuit . . . , Holmstrom had no reason to sue Hunter." 182 Mont. at 49, 595 P.2d at 363. Again, this award of attorney's fees was based on our inherent equitable power to grant the relief that justice requires.

We applied the _Foy_ exception again in _Stickney_ with similar limitations. In _Stickney_, Justice of the Peace Jensen asked several spectators in her courtroom to leave before a trial, they refused, and she found them in contempt. 195 Mont. at 416, 636 P.2d at 861. The spectators sued Jensen in her personal capacity for official misconduct in office. We held that the facts as pleaded presented no basis for personal liability, therefore the attorney's fees awarded by the district court were proper. As in _Foy_, Jensen was forced to personally defend against a frivolous action through no fault of her own. 195 Mont. at 418, 636 P.2d at 862.

This equitable exception to the general rule is available in those unique factual situations in which a party is forced into a frivolous lawsuit and must incur attorney's fees to dismiss the claim. In such cases, equity requires an award of attorney's fees to "make the party whole." We have rejected many efforts to expand the limited application of _Foy_ and its progeny. Indeed, two months after the _Foy_ decision, we sharply limited its applicability in

21

Masonovich v. School District No. 1 (1978), 178 Mont. 138, 582 P.2d 1234.

The plaintiff in Masonovich obtained a preliminary injunction against the defendants and included attorney's fees in his memorandum of costs. We distinguished Foy, stating:

> In the instant case the plaintiff's position is entirely different from the third party defendant's position in Foy. **Here, plaintiff obtained an attorney to institute legal action.** He did not obtain an attorney to help him defend against a claim against him as in Foy. Plaintiff freely chose to obtain the services of a private attorney to institute a suit against others. . . . Foy is distinguishable on this basis and is not controlling in this case.

178 Mont. at 141, 582 P.2d at 1236 (emphasis added). Goodover's position as the plaintiff in this litigation, as we explained in Masonovich, normally will preclude an award of attorney's fees under Foy.

We again explained the distinguishing characteristics of Foy in State ex rel. Wilson. v. Dept. of Natural Resources (1982), 199 Mont. 189, 202, 648 P.2d 766, 772, stating:

> The Foy exception has been narrowly drawn and is applicable only where the action into which the prevailing party has been forced is utterly without merit or frivolous.

Here, Goodover was not forced into wholly frivolous litigation through no fault of his own; he filed suit against Lindey's. Furthermore, if the losing party had a reasonable basis to believe his cause might prevail, the Foy exception is inapplicable. Id. Lindey's has prevailed at various points in this litigation, and we did not determine its earlier appeals to be utterly without merit. Foy and its progeny are distinguishable from the present case and

22

do not form a basis for an award of attorney's fees.

In addition to the equitable exception invoked to make a party whole, some states and the federal courts have adopted a bad faith exception to the American Rule. See Chambers v. NASCO, Inc. (1991) ___ U.S. ___, ___, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27, 45. Montana has not expressly adopted a malicious or bad faith equitable exception to the American Rule and we decline to do so at this time. In the present case, the District Court relied on Joseph Russell Realty Co. for the proposition that this Court announced therein a "bad faith or malicious or fraudulent basis" for the award of attorney's fees. This reliance is misplaced.

In Joseph Russell Realty Co., the plaintiff argued that attorney's fees should be awarded when another's fraudulent act is the cause of litigation, citing Home Ins. Co. v. Pinski Brothers, Inc. (1972), 160 Mont. 219, 500 P.2d 945. We stated that **assuming this exception exists**, it was not applicable to the facts in that case because the defendant had not acted fraudulently, maliciously or in bad faith. Joseph Russell Realty Co., 185 Mont. at 505, 605 P.2d at 1112.

Joseph Russell Realty Co. cited Home Ins. Co. for the **possibility** of a "fraudulent exception" to the American Rule but did not rely on or apply such an exception. In Home Ins. Co., this Court awarded attorney's fees against an insurer based on its breach of its duty to defend an insured, not on a fraudulent exception to the American Rule. Home Ins. Co., 160 Mont. at 228, 500 P.2d at 950. Under the Home Ins. Co. rationale, we have steadfastly refused to extend this narrow exception beyond those

23

cases in which an insurer breaches its duty to defend.

We recently refused to extend the Home Ins. Co. exception to cover the situation in which an insurer wrongfully refused to provide coverage to the insured. Yovish v. United Services Auto. Ass'n (1990), 243 Mont. 284, 291, 794 P.2d, 682, 686. Although the distinction between failing to defend and failing to provide coverage may be slight, we hesitated to expand the exception to the general rule without legislative authority. Id. Similarly, we will not expand the insurance exception to include the more general exception for bad faith and malice relied on by the District Court in this case. Montana's statutes and Rules of Civil Procedure, together with the limited Foy exception, provide ample opportunity for awarding attorney's fees when a party or an attorney abuses the judicial system.

The District Court found that the slow progress in this litigation was due in large measure to Lindey's attempts to re-litigate the case both at the District Court and Montana Supreme Court levels. While this may be true to some extent, we did not determine Lindey's earlier appeals to be wholly without merit. Nor do we agree that Lindey's should shoulder all of the blame for this lengthy and bitter litigation. In any event, attorney's fees were neither argued to, nor awarded by, the District Court under § 37-61-421, MCA.

The awarding of attorney's fees is within the discretionary power of the district court. Grenfell v. Duffy (1982), 198 Mont. 90, 96, 643 P.2d 1184, 1187. The general rule remains that attorney's fees will not be awarded to the prevailing party absent

24

statute or contract. This action presents neither a statutory nor a contractual basis for the award of attorney's fees, nor does it fall within one of the narrow exceptions to the general rule recognized in Montana. Yovish, 243 Mont. at 290, 794 P.2d at 686. We hold, therefore, that the District Court abused its discretion in awarding attorney's fees.

Affirmed in part, reversed in part and remanded for entry of judgment in accordance with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices

Chief Justice J. A. Turnage did not participate.

25

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusions pertaining to Issues I through VI.

I dissent from the majority's decision to reverse the District Court's award of attorney fees. I would adopt an exception to the so-called "American Rule" by allowing District Courts to assess attorney fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. The basis for an award under such circumstances was set forth by the United States Supreme Court in *Chambers v. Nasco, Inc.* (1991), 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27, 45. That Court gave the following explanation with which I concur:

> In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, Universal Oil [Products Co. v. Root Refining Co. (1946), 328 US 575,] 580, 90 L Ed 1447, 66 S Ct 1176, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," Hutto [v. Finney (1978)], 437 US [678], 689, n 14, 57 L Ed 2d 522, 98 S Ct 2565. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*Chambers*, 115 L. Ed. 2d at 46.

26

Based on this exception to the "American Rule" regarding assessment of attorney fees, I would affirm the District Court's award.

_____
Justice

Justice John C. Harrison concurs in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice

27