No. 96-039

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

SHIRLEY A. HERBST,

      Petitioner and Respondent,

  and

RANDALL L. HERBST,

      Respondent and Appellant.

FILED

SEP 19 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Marcelle C. Quist; Quist & Bowen, Bozeman,
          Montana

      For Respondent:

          Daniel J. Roth; Kommers & Roth, Bozeman,
          Montana


Submitted on Briefs:  September 12, 1996

Decided:  September 19, 1996

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

Randall L. Herbst (Randy) appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, denying his motion for modification of custody and awarding costs and attorney fees. We affirm.

We address the following issues on appeal:

1. Did the District Court abuse its discretion in awarding witness costs?

2. Did the District Court abuse its discretion in awarding attorney fees?

3. Did the District Court abuse its discretion in denying Randy's motion for modification?

The marriage of Randy and Shirley Herbst was dissolved in 1989. The Amended Decree provided for joint custody of the parties' three minor sons; Shirley was designated as the boys' primary physical custodian, subject to visitation rights in Randy. Both Randy and Shirley subsequently remarried.

In the summer of 1994, the parties' son Casey, then age 14, lived with Randy and his wife Celeste pursuant to the previously ordered visitation. At the end of the summer, Casey asked to stay with Randy and Celeste on a permanent basis. Randy did not return

2

Casey to Shirley at that time; instead, he filed a motion pursuant to § 40-4-219(1)(c) and (d), MCA, to modify Casey's custody by changing primary physical custody to Randy. Shirley responded, and also filed motions requesting orders directing Randy to return Casey to her custody and holding Randy in contempt.

The District Court ordered Randy to return Casey to Shirley's custody and set a hearing on Shirley's motion for contempt. Casey did not return to Shirley's home; he "ran away" to the home of Leroy Arneson, Randy's neighbor, who employed Casey to perform chores during the summer months and after school. After a hearing, the District Court found Randy in contempt of its Amended Decree.

The court subsequently ordered that Shirley's custody of Casey continue, with visitation in Randy, pending resolution of Randy's motion to modify custody. It also ordered a custody evaluation and recommendation by counselor Suzie Saltiel, who previously had interviewed Casey at Randy's behest regarding Casey's reasons for wanting to remain in Randy's custody. The parties later agreed that Zan Hoxsey would perform the custody evaluation on a shared cost basis.

Both Randy and Shirley testified at the hearing on Randy's motion for modification of custody, as did Randy's wife Celeste and Leroy Arneson. Ms. Saltiel and Ms. Hoxsey also testified. Thereafter, the District Court filed its findings of fact, conclusions of law and order denying Randy's motion to modify, setting forth a revised visitation schedule, and awarding Shirley costs and attorney fees. After a subsequent hearing, the court

3

awarded Shirley $2,494.29 as reasonable attorney fees and costs.

Randy appeals.

1. Did the District Court abuse its discretion in awarding Shirley certain witness costs?

Randy does not dispute that the parties generally agreed to share the costs associated with Ms. Hoxsey's evaluation and report. He contends, however, that the District Court erred in awarding Shirley $70 witness costs for Ms. Hoxsey to appear and testify at the hearing on his motion to modify. He points out that Ms. Hoxsey was subpoenaed by Shirley and argues that costs awarded under § 40-4-110, MCA, are constrained by § 25-10-201, MCA. According to Randy, § 25-10-201, MCA, and Goodover v. Lindey's Inc. (1992), 255 Mont. 430, 843 P.2d 765, limit expert witness fees awardable as costs to the statutory rate of $10.00 per day.

We need not address the merits of this issue. As stated above, the parties generally agreed to share the costs associated with Ms. Hoxsey's custody evaluations and report. Ms. Hoxsey testified that she understood her involvement to include performing the custody evaluations, offering opinions and observations and providing testimony at the hearing on those matters. Randy's counsel did not cross-examine her in the latter regard and Randy did not testify to the contrary at either the hearing on his motion to modify or the subsequent hearing on costs and attorney fees.

Section 40-4-110, MCA, authorizes a court, in its discretion, to "order a party to pay a reasonable amount for the cost to the other party of . . . defending [a] proceeding" such as Randy's motion to modify. Given the record before us with regard to each

4

party's responsibility for one-half of Ms. Hoxsey's costs, we conclude that the District Court did not abuse its discretion in awarding the $70 in witness fees.

2. Did the District Court abuse its discretion in awarding attorney fees?

Randy does not contend that the amount of the attorney fees the District Court ultimately awarded in this case was unreasonable or unsupported. Rather, he argues that the court did not sufficiently consider the financial resources of both parties, as required by § 40-4-110, MCA, prior to exercising its discretion to award attorney fees to Shirley under that statute. We disagree.

As part of her response to Randy's motion, Shirley specifically requested an award of attorney fees. She testified at the hearing on the motion that she works regular hours at a grocery store from Monday through Friday and occasionally works weekend fill-in shifts. Shirley also testified that she did not have the financial ability to obtain counseling she had sought. According to Shirley, it was a financial hardship for her to attend the hearing and she was unable to continue to take time off work and pay counsel. She stated that she had to borrow the money to defend the action and mentioned that her husband had been sick and that there were related medical bills.

Notwithstanding his knowledge that Shirley was seeking attorney fees, Randy did not cross-examine her in an effort to undermine her testimony regarding her lack of financial resources. Nor did he present testimony through himself or his wife Celeste which would indicate that his financial situation was precarious.

5

The record does not reflect that he was prevented from doing so by any action of the District Court. The testimony from which the court could obtain a perspective about Randy's financial resources included his testimony that he worked construction and had the "winters off," that Celeste owned her own barbershop and that Randy and Celeste were in the process of purchasing a plot of land.

It is against this backdrop and this record that Randy argues that the District Court did not consider the parties' respective financial resources, as required by § 40-4-110, MCA, prior to awarding attorney fees to Shirley. While the relevant evidence before the court with regard to either party's financial situation was not overly substantial, and while the District Court mischaracterized some of that evidence in minor ways, it is clear that the court did consider the evidence of record prior to exercising its discretion.

Randy relies primarily on In re Marriage of Rager (1994), 263 Mont. 361, 868 P.2d 625, in arguing that the record in this case contains insufficient evidence of the parties' financial resources to support an award of attorney fees. His reliance on Marriage of Rager is misplaced. In addressing whether the district court abused its discretion in awarding attorney fees under § 40-4-110, MCA, we observed that the district court found that the husband's earning capacity exceeded his wife's by $5,000; on that basis, we determined that the court "considered the financial resources of the parties" before awarding attorney fees to the wife. Marriage of Rager, 868 P.2d at 628. We did not hold--or even suggest--that

6

respective earning capacity or any other specific financial data was a required item of evidence without which no attorney fee award could be made.

On the basis of the record before us, we conclude that the District Court did not abuse its discretion in awarding Shirley attorney fees.

3. Did the District Court abuse its discretion in denying Randy's motion for modification?

Randy properly premised his motion for modification of Casey's primary physical custody on § 40-4-219, MCA. In re Marriage of Johnson (1994), 266 Mont. 158, 879 P.2d 689. The law is clear that a district court originally determines custody under the "best interest" standard; however, the court can modify joint custody so as to substantially change the child's primary residential living arrangements only if it finds the existence of the "change of circumstance" requirement of § 40-4-219(1), MCA, and one of the subsection (1)(a) through (f) factors contained in that statute. See Marriage of Johnson, 879 P.2d at 694.

On appeal, Randy argues that the District Court erred in denying his motion. The sole bases he advances for his argument are that Casey's desires, together with Ms. Saltiel's opinion that those desires had valid underpinnings, constitute overwhelming evidence that modification of custody was in Casey's best interest.

It is true that Casey's stated desire to live with Randy meets the requirement of § 40-4-219(1)(d), MCA, regarding the desires of a child 14 years of age or older. However, Randy ignores the "change of circumstances" requirement and points to no evidence of

7

record under which the District Court could properly make such a finding in this case, much less be mandated to do so as a matter of law. Indeed, his briefs do not contain a single reference to § 40-4-219, MCA. We observe, in this regard, that Randy contended in the District Court that Casey's age constituted a sufficient change in circumstance as a matter of law. He cited to no authority for this proposition and cites to none here.

The § 40-4-219, MCA, findings are jurisdictional prerequisites to a modification of custody which substantially changes a child's residential living arrangements. Marriage of Johnson, 879 P.2d at 694. When those prerequisites have not been met, the "best interest" standard does not arise.

Moreover, Randy has not established any error in the District Court's determination that Casey's best interests were served by remaining in Shirley's primary physical custody. Neither Ms. Saltiel nor Ms. Hoxsey affirmatively recommended a change in custody. Ms. Hoxsey opined that Casey's desires, on a stand-alone basis, were an insufficient reason to modify custody. In addition, both Shirley and Ms. Hoxsey described conflicts regarding Randy's failure to cooperate in following visitation rules established by the court.

Randy relies primarily on Casey's wishes to live with him. However, neither the § 40-4-219, MCA, criteria nor the best interest standard contemplates a district court being bound by the stated desires of a 14-year-old child regarding his best interests. See §§ 40-4-219 and 40-4-212, MCA. Indeed, the discretionary

8

nature of a district court's grant or denial of a § 40-4-219, MCA, motion to modify custody is clear in the statutory language stating that the court "may in its discretion" modify a prior custody decree in the event it makes certain findings.

We conclude that the District Court did not abuse its discretion in denying Randy's motion for modification of custody.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9