No. 01-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 98

MOUNTAIN WEST FARM BUREAU
MUTUAL INSURANCE COMPANY,

        Plaintiff and Respondent,

   v.

ADDI BREWER, Respondent,
and ASHLEY CHRISTENSEN,

        Defendants and Appellants.

CHRIS CHRISTENSEN and ANGIE CHRISTENSEN,
individually and as guardians and conservators for
ASHLEY L. CHRISTENSEN and her estate,

        Petitioners and Appellants,

   v.

MOUNTAIN WEST FARM BUREAU MUTUAL
INSURANCE COMPANY,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and for the County of Missoula, Cause No. DV-98-86570,
                 The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

           Robert T. Bell, Richard A. Reep, Reep, Spoon & Gordon, P.C., Missoula,
           Montana

       For Respondent:

Lon J. Dale, Milodragovich, Dale, Steinbrenner & Binney, P.C., Missoula, Montana

Submitted on Briefs: January 31, 2002

Decided: April 24, 2003

Filed:

_____
                     Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1      The Appellants, Chris and Angie Christensen ("Christensens"), appeal from an order issued by the Fourth Judicial District Court, Missoula County, denying their request for attorney fees.  We reverse and remand.

¶2      The parties present the following issues on appeal:

¶3      1.  Did the Christensens waive their right to recover attorney fees?

¶4      2.  Is an injured third-party claimant who prevails in an insurance coverage action against a motor vehicle liability insurer entitled to recover his or her attorney fees?

BACKGROUND

¶5      Following a single vehicle accident in which the Christensens' daughter, Ashley Christensen, sustained significant injuries, the Christensens filed a declaratory judgment action against Mountain West Farm Bureau Mutual Insurance Company ("Mountain West") to establish insurance coverage under a Mountain West motor vehicle policy.  The District Court entered summary judgment in favor of Mountain West and we reversed.  For a recitation of the factual and procedural background of that phase of the case, see *Christensen v. Mountain West*, 2000 MT 378, 303 Mont. 493, 22 P.3d 624.

¶6      On remand, the Christensens moved for an award of attorney fees incurred in the declaratory judgment action.  The Christensens submitted § 27-8-313, MCA, the "supplemental relief" provision of the Uniform Declaratory Judgments Act, and the insurance exception to the American Rule as authority for an award of attorney fees.  On

3

June 19, 2001, the District Court denied the Christensens' motion. On July 13, 2001, the Christensens filed a notice of appeal from the District Court's denial.

## STANDARD OF REVIEW

¶7 Whether an injured third-party claimant who prevails in an insurance coverage action against a motor vehicle liability insurer may recover his or her attorney fees is a question of law. We review issues of law to determine whether the district court's interpretation of the law is correct. *Armstrong v. Gondeiro*, 2000 MT 326, ¶ 12, 303 Mont. 37, ¶ 12, 15 P.3d 386, ¶ 12.

## DISCUSSION

## ISSUE ONE

¶8 Did the Christensens waive their right to recover attorney fees?

¶9 Under Montana's Rules of Civil Procedure, a party must give notice to the other party of the facts which he or she expects to prove, and the facts must disclose the presence of all the elements necessary to make out a claim. *See* Rule 8(a), M.R.Civ.P.; *Mysse v. Martens* (1996), 279 Mont. 253, 266, 926 P.2d 765, 773. Similarly, if a party fails to raise an issue or argue it in his or her brief, we will deem the issue waived and will not address it. *Schaubel v. Iversen* (1993), 257 Mont. 164, 166, 848 P.2d 489, 490; *Teesdale v. Anschutz Drilling Co.* (1960), 138 Mont. 427, 431, 357 P.2d 4, 7. We have also held that if a party fails to raise an issue on a first appeal, he or she cannot then raise the issue in a second appeal. *Downs v. Smyk* (1982), 200 Mont. 334, 343, 651 P.2d 1238, 1242, *overruled on other grounds by Gray v. City of Billings* (1984), 213 Mont. 6, 689 P.2d 268.

4

¶10    Mountain West argues that because the Christensens never requested attorney fees in either their briefs for summary judgment or in their first appeal before this Court, they have waived their right to now request them. The Christensens counter that they requested attorney fees in their initial Petition for Declaratory Relief. While they did not request attorney fees in their motion for summary judgment, Rule 56, M.R.Civ.P., allows a party to move for summary judgment on a portion of a party's action. The Christensens contend that they simply sought summary judgment initially to establish insurance coverage, not attorney fees. They point to their summary judgment motion's title, Motion for Summary Judgment re: Insurance Coverage, as support for this position.

¶11    The Christensens argue that they did not ask for attorney fees until after we remanded the matter to the District Court because they had not yet prevailed in this matter. We have previously held that a court may award attorney fees only to a prevailing party. *Kunst v. Pass*, 1998 MT 71, ¶ 38, 288 Mont. 264, ¶ 38, 957 P.2d 1, ¶ 38. In *Kunst*, we concluded that a plaintiff could seek attorney fees under the Residential Landlord and Tenant Act despite failing to mention a claim for attorney fees in the complaint, pretrial order, or trial brief. We reasoned that the defendants had notice of the claim since the plaintiff asked for "other and further relief as the Court may deem just and proper," they had an opportunity to defend themselves at oral argument, and a court may award attorney fees only to a prevailing party.

¶12    Here, Mountain West had notice of the Christensens' desire to seek attorney fees as they specifically prayed for such relief in their initial Petition for Declaratory Relief. Like

5

the defendant in *Kunst*, Mountain West had an opportunity to defend against the request for attorney fees, which it successfully did in the District Court. Finally, the Christensens had not prevailed until we remanded the matter to the District Court. Thus, waiting to file a motion for attorney fees until prevailing on appeal was proper. For these reasons, we conclude that the Christensens did not waive their entitlement to attorney fees.

ISSUE TWO

¶13  Is an injured third-party claimant who prevails in an insurance coverage action against a motor vehicle liability insurer entitled to recover his or her attorney fees?

¶14  Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *Mountain West Farm Bureau v. Hall*, 2001 MT 314, ¶ 13, 308 Mont. 29, ¶ 13, 38 P.3d 825, ¶ 13. However, we have recognized equitable exceptions to the American Rule. *See, e.g., Mountain West,* ¶ 14 (awarding attorney fees when a party incurs legal fees to establish a common fund which avails non-participating beneficiaries); *National Cas. Co. v. American Bankers*, 2001 MT 28, ¶ 28, 304 Mont. 163, ¶ 28, 19 P.3d 223, ¶ 28 (awarding attorney fees where a party has been forced to defend against a wholly frivolous or malicious action); *School Trust v. State ex rel. Bd. of Com'rs*, 1999 MT 263, ¶ 67, 296 Mont. 402, ¶ 67, 989 P.2d 800, ¶ 67 (awarding attorney fees pursuant to the private attorney general theory). Further, we have approved attorney fee awards in the absence of statutory or contractual authority where an insurer breaches its obligation to defend an insured. *See Home Ins. Co. v. Pinski Brothers, Inc.* (1972), 160 Mont. 219, 500 P.2d 945.

6

¶15 The Christensens essentially submitted two theories to the District Court in support of an attorney fee award, one discretionary and the other obligatory. First, the Christensens maintained that § 27-8-313, MCA, authorizes a court, in its discretion, to award attorney fees in declaratory judgment actions. Second, the Christensens argued that the insurance exception to the American Rule, as recognized in *Pinski Brothers*, obligates an insurer to compensate a prevailing insured for attorney fees incurred in a declaratory judgment action, pursuant to a breach of contract theory. The Christensens acknowledge that in Montana, to date, the insurance exception has applied to duty to defend cases only. However, the Christensens urge expansion of the insurance exception to afford attorney fees incurred in establishing a duty to indemnify.

¶16 Mountain West responds that no statutory or contractual authority exists to support the Christensens' attorney fee proposition. Further, citing *Yovish v. United Services Auto. Ass'n* (1990), 243 Mont. 284, 794 P.2d 682, Mountain West insists that we have refused to expand the insurance exception to incorporate duty to indemnify cases absent legislative authority. Since no statutory or contractual authority supports an award of attorney fees, and since none of the exceptions to the American Rule prove applicable to the case at bar, Mountain West implores us to affirm the District Court.

¶17 The parties agree that no contractual authority exists to support an award of attorney fees. As for statutory authority, we recently held that "§ 27-8-313, MCA, authorizes a court to award attorney fees when the court, in its discretion, deems such an award 'necessary or proper.'" *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 42, ___ Mont. ___,

7

¶ 42, ___ P.3d ___, ¶ 42. Clearly, the holding in *Trustees of Indiana University* applies to this case and, in fact, the Christensens submitted § 27-8-313, MCA, to the District Court as authority for an attorney fee award. However, the Christensens seek more than mere discretionary authority for an award. On appeal, they submit that Mountain West is obligated to reimburse them based on the insurance exception rationale articulated in *Pinski Brothers*.

¶18    *Pinski Brothers* remains the seminal decision addressing the recovery of attorney fees in an action between an insurer and insured. *Pinski Brothers* involved a suit between an insurer and its insured over the insurer's subrogation rights and the insured's right to damages for breach of the insurance contract. This Court held that the wrongful acts of the insurer in suing its insured under nonexistent subrogation rights and refusing to defend the insured constituted a breach of the insurer's obligations under the insurance contract rendering the insurer liable for attorney fees, expenses, and court costs occasioned by its conduct. *Pinski Brothers*, 160 Mont. at 228, 500 P.2d at 950. Since *Pinski Brothers*, this Court has on several occasions acknowledged an insured's right to recover attorney fees incurred on account of an insurer's breach of the duty to defend. *See, e.g., Lindsay Drilling v. U.S. Fidelity & Guar.* (1984), 208 Mont. 91, 97, 676 P.2d 203, 206; *Truck Ins. Exchange v. Woldstad* (1984), 212 Mont. 418, 423, 687 P.2d 1022, 1025; *Goodover v. Lindey's Inc.* (1992), 255 Mont. 430, 448, 843 P.2d 765, 776.

¶19    Approximately eighteen years after we decided *Pinski Brothers*, we were asked in *Yovish* to expand the insurance exception to afford attorney fee awards when an insurer

8

breaches its duty to indemnify. In *Yovish*, an insured filed suit against his insurer to establish coverage for an automobile accident following the insurer's denial of coverage. Following a bench trial, the district court concluded that coverage existed pursuant to an automobile liability policy and awarded the insured attorney fees incurred in establishing coverage. The insurer appealed.

¶20     On appeal, the insured did not advance a statutory or contractual justification for the award. Therefore, we analyzed the award pursuant to the insurance exception instituted in *Pinski Brothers*. We concluded:

> We have approved awards of attorney fees in the absence of a specific statute or contractual provision granting the right to attorney fees in cases where an insurer has breached its obligation to defend an insured. The present case, however, is not a case where an insurer has wrongfully refused to defend an insured but where an insurer has wrongfully refused to provide coverage to an insured. Although the distinction may be slight, we hesitate to expand the exception to the general rule without legislative authority.
>
> We understand that the failure to award attorney fees in cases such as the present one may result in circumstances where the entire compensatory award is consumed by the costs of litigation. We also recognize that the failure to grant attorney fees may force insureds with modest claims simply to accept an insurer's erroneous denial of coverage. Nonetheless, the legislature, not the courts, must remedy the wrongs created by this situation.

*Yovish*, 243 Mont. at 290-91, 794 P.2d at 686 (citations omitted). We now believe that our deference to the Legislature in *Yovish* was misguided and it is hereby overruled.

¶21     Certainly, the American Rule and its corresponding exceptions derive from the common law. *See Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 97, 303 Mont. 274, ¶ 97, 16 P.3d 1002, ¶ 97; 20 Am.Jur.2d *Costs* § 57 (1995). In *Dimick v. Schiedt* (1935), 293 U.S.

9

474, 487, 55 S.Ct. 296, 301, 79 L.Ed. 603, the United States Supreme Court offered the following about evolution of the common law:

> It is said that the common law is susceptible of growth and adaptation to new circumstances and situations, and that the *courts* have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule; and some attempt is made to apply that principle here. The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions.  [Emphasis added.]

¶22    In *Pence v. Fox* (1991), 248 Mont. 521, 813 P.2d 429, this Court considered for the first time whether a minor child could assert a loss of consortium claim following a tortious, nonfatal injury to a parent.  The respondents argued "that because social and economic factors should be considered before extending to children the right to consortium claims, the legislature is the appropriate body to create such an expansion."  *Pence*, 248 Mont. at 524, 813 P.2d at 431.  We rejected this argument, stating "[t]he courts have the responsibility to reform common law as justice requires."  *Pence*, 248 Mont. at 524, 813 P.2d at 431. Further, we adopted the following conclusions from the Supreme Courts of Iowa and Vermont:

> The contention that recognition of such a cause of action is a question for the legislature ignores the fact that the action for loss of consortium is a creation of the common law, and that the development of the common law is within the proper sphere of our authority and responsibility.
>
> [S]uch an argument ignores our responsibility to face a difficult legal question and accept judicial responsibility for a needed change in the common law . . . when the conditions and needs of the society have changed, judges must adapt the common law to those new conditions . . . . It must also be noted that our recognition of a new cause of action for the loss of parental consortium, as in the present case, in no way precludes the legislature from addressing the subject; it is still free to act.  The legislature may ratify, limit or reject our holding.

10

*Pence*, 248 Mont. at 524-25, 813 P.2d at 431 (citations omitted).

¶23    *Pence* does not represent an isolated incident of judicial action in the face of legislative silence.  This Court has on several occasions acted where a public policy vacuum once existed.  *See Maguire v. State* (1992), 254 Mont. 178, 196-97, 835 P.2d 755, 766-67 (Trieweiler, J., dissenting).  Moreover, several sister jurisdictions have articulated positions similar to the one announced in *Pence*.  *See, e.g., Bartholomew v. Schweizer* (Conn. 1991), 587 A.2d 1014, 1019 (noting that in the absence of legislative action, courts have the common law power to declare what the common law is); *State ex rel. Atkinson v. Wilson* (W. Va. 1984), 332 S.E.2d 807, 812-13 ("Certainly it cannot be a usurpation of legislative power for this Court to continue to define what has been left within the common law realm."); *Surina v. Buckalew* (Alaska 1981), 629 P.2d 969, 973 ("[I]t is our task to explicate the common law which we will apply in these situations unless and until the Alaska legislature acts to modify it.").

¶24    As the American Rule and associated exceptions find their origin in the common law, we need not, contrary to our statement in *Yovish*, await legislative direction to analyze the issue presented.  Instead, *Pence* vests authority with the judiciary to interpret, modify, and apply common law principles in the absence of legislative preemption.  We, therefore, erred in *Yovish* when we deferred consideration of the insurance exception to the Legislature.

¶25    Thus, the question before us today is not whether we maintain authority to modify the insurance exception, but whether, in fact, we should modify the exception.  The Christensens contend that no practical distinction exists between an unconditional refusal to defend and

11

undertaking a defense under a reservation of rights to ascertain the existence of coverage. We find the authority submitted in support of the Christensens' position persuasive.

¶26    Professor Appleman appears to agree that any suggested distinction between a refusal to defend and a challenge to the existence of coverage is transparent at best.  In commenting upon qualifications imposed on the right to recover attorney fees by some courts, Appleman states:

> [D]espite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured.  After all, the insurer had contracted to defend the insured, and it failed to do so.  It guessed wrong as to its duty, and should be compelled to bear the consequences thereof.  If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly.  That is, the insured has a contract right to have actions against him defended by the insurer, at its expense.  If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above.

7C Appleman, *Insurance Law and Practice* § 4691, at 282-83 (1979).  While some courts adhere to the principles lamented by Appleman, other courts have promulgated policy to assuage Appleman's concerns.

¶27    In *Hegler v. Gulf Ins. Co.* (S.C. 1978), 243 S.E.2d 443, Gulf Insurance Company ("Gulf") insured Hegler under a general automobile liability insurance policy.  Following a single vehicle accident, an injured passenger filed suit against Hegler.  Gulf undertook defense of Hegler in the underlying tort action under a reservation of rights.  Gulf subsequently filed a declaratory judgment action to determine its obligations under the insurance policy, specifically whether it maintained a duty to indemnify Hegler.  Hegler

12

retained independent counsel to represent him in the declaratory judgment action and ultimately prevailed against Gulf. Gulf subsequently denied Hegler's request for reimbursement of attorney fees incurred in the declaratory judgment action. Hegler filed suit to recover the fees, the trial court denied Hegler's request, and Hegler appealed to the South Carolina Supreme Court.

¶28 On appeal, the South Carolina Supreme Court noted the untenable position in which Hegler found himself–he had to employ independent counsel to defend against the denial of coverage to maintain Gulf's defense of the underlying tort claim. Thus, the South Carolina Supreme Court observed the following:

> The declaratory judgment action established respondent's obligation under the policy to defend the action for damages. If respondent had refused initially to defend, it would undoubtedly have been liable for the payment of counsel fees incurred by appellant in the defense of the damage action. Instead however of refusing initially, respondent began the defense and then sought, through the declaratory judgment action, to avoid any obligation to continue to defend. In order to obtain respondent's continued defense of the action for damages, it was necessary for appellant to employ counsel to resist the contention by respondent of lack of coverage. There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage. In either event, an insured must employ counsel to defend in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense. In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.

*Hegler*, 243 S.E.2d at 444. Accordingly, the South Carolina Supreme Court reversed the denial of fees and remanded for entry of judgment in favor of Hegler. *Hegler*, 243 S.E.2d at 445.

13

¶29    In *Farm Bureau Mut. Ins. Co. v. Kurtenbach* (Kan. 1998), 961 P.2d 53, the Kansas

Supreme Court was presented with an issue virtually identical to that contemplated in

*Hegler*. There, a third-party claimant filed suit against the insureds following an automobile

accident. The insureds requested that the insurer defend them in the underlying action and

indemnify them for any potential damages. The insurer provided a defense to the underlying

action under a reservation of rights and later filed a declaratory judgment action contesting

its obligations to the insureds. After ruling for the insureds, the trial court awarded attorney

fees to the insureds and the insurer appealed.

¶30    The Kansas Supreme Court affirmed the award, holding that an insured may recover

his or her attorney fees incurred in defending a declaratory judgment action when an insurer

denies coverage and the duty to defend and a trial court determines that coverage exists.

*Kurtenbach*, 961 P.2d at 64. The Kansas Supreme Court justified its holding with the

following:

> Where an insurer gives notice of its intent to defend under a reservation of
> rights and then brings a declaratory judgment action against its insured before
> the underlying suit is resolved, seeking a determination that it has no duty to
> defend, the insured must expend his or her personal funds to enforce a duty
> under the existing policy–the duty to defend.
>
> . . . .
>
> The availability of expenses and attorney fees in such a situation is
> necessarily dependent on the existence of coverage. If it is determined in the
> declaratory judgment action that no coverage exists under the policy, the fees
> and expenses incurred by the insured are his or her own expense. If no
> coverage exists, the insurer is without obligation to either defend or to pay for
> any judgment rendered. . . .

14

However, if it should be determined that coverage exists, one may conclude that the insured was compelled to expend his or her own funds in litigation expenses to obtain the benefit of his or her bargain with the insurer. If these expenses are not reimbursed to the insured, the insured fails to obtain a substantial benefit already paid for under the policy: the defense of the claim.

*Kurtenbach*, 961 P.2d at 64.

¶31    In *Hayseeds, Inc. v. State Farm Fire & Cas.* (W.Va. 1986), 352 S.E.2d 73, an insured filed suit against his own insurance company over a property damage claim. After prevailing in the action, the insured sought recovery of his fees incurred in establishing coverage. The West Virginia Supreme Court of Appeals acknowledged the general American Rule but stated that "the disparity of bargaining power between company and policyholder (often exacerbated by the dynamics of the settlement bureaucracy) make insurance contracts substantially different from other commercial contracts . . . ." *Hayseeds*, 352 S.E.2d at 78. The court extolled the virtues of the American Rule but then observed "the fact that the general rule concerning fees works well *most* of the time does not necessarily imply that the rule works well *all* of the time." *Hayseeds*, 352 S.E.2d at 78. The court affirmed the attorney fee award concluding that "[t]o impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain." *Hayseeds*, 352 S.E.2d at 80.

¶32    The Washington Supreme Court followed the rationale employed in *Hayseeds* in *Olympic S.S. Co. v Centennial Ins. Co.* (Wash. 1991), 811 P.2d 673. In *Olympic S.S. Co.*, Olympic Steamship Company ("Olympic") stored, labeled, cased, and shipped salmon for various salmon packers. In 1985, Olympic discovered that its casing equipment was

15

damaging the cans of salmon, subjecting consumers to an increased risk of botulism. This discovery led to a product recall and destruction of the affected salmon. Olympic notified its insurers of the situation in an effort to recover the costs incurred in the recall. The insurers denied coverage for the claims and Olympic filed suit. Olympic prevailed on summary judgment and recovered its attorney fees incurred in settling underlying claims and establishing coverage. The insurers appealed, challenging, in part, the attorney fee award.

¶33    Citing *Hayseeds*, the Washington Supreme Court concluded:

> When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured.
>
> . . . [W]e believe that an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

*Olympic S.S. Co.*, 811 P.2d at 681 (citations omitted). The court also extended to an insured "the right . . . to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured." *Olympic S.S. Co.*, 811 P.2d at 681. Accordingly, the Washington Supreme Court affirmed the award of attorney fees.

16

¶34 In *McGreevy v. Oregon Mut. Ins. Co.* (Wash. 1995), 904 P.2d 731, the Washington Supreme Court revisited the attorney fee issue discussed in *Olympic S.S. Co.* The court stated:

> [T]he thrust of our decision in *Olympic Steamship* is that equity recognizes that an insurance company, because of its enhanced fiduciary obligation, owes a measure of relief to its insured when certain factors combine to frustrate an insured's justifiable expectation of insurance protection. As referenced in *Olympic Steamship*, those factors are (1) a disproportionate bargaining position of an insurer vis-a-vis the typical insurance consumer; and (2) actions of the insurer that cause an insured to suffer the costs of litigation in order to compel an insurer to honor its commitment to provide coverage.

*McGreevy*, 904 P.2d at 737. The court reaffirmed the holding from *Olympic S.S. Co.*, stating "[i]n our opinion, when an insurer unsuccessfully contests coverage, it has placed its interests above the insured. Our decision in *Olympic Steamship* remedies this inequity by requiring that the insured be made whole." *McGreevy*, 904 P.2d at 738.

¶35 Admittedly, courts have struggled with classifying the authority for the remedy contemplated herein, i.e., is the award grounded in contractual principles or founded upon an equitable exception to the American Rule or some combination of the two? Maryland's highest court deliberated over this very issue:

> From the standpoint of a strict application of the American Rule, there is no logical reason why the successful plaintiff's action on a liability insurance policy for breach of a promise to defend, or to pay the cost of defense, should include counsel fees in prosecuting the breach of contract action, when successful plaintiffs' actions for other breaches of insurance contracts, or for breaches of other contracts, do not ordinarily include those counsel fees. The Maryland rule awarding to the successful insured counsel fees in declaratory judgment or assumpsit actions with liability insurers for breach of the promise to defend or to pay the cost of defense is an exception to the American Rule.

17

*Collier v. MD-Individual Practice* (Md. 1992), 607 A.2d 537, 544. The Washington Supreme Court, as indicated above, cites contractual principles in support of its position but has stated that "we are satisfied that [the *Olympic Steamship* decision] is consistent with the long-standing rule that an award of fees may be based on recognized grounds of equity." *McGreevy*, 904 P.2d at 735.

¶36 We find the above cited authority compelling to hold an insurer liable for attorney fees when the insurer breaches its duty to indemnify. We decline to further propagate the arbitrary legal fiction that a substantive distinction exists between a breach of the duty to defend and the breach of the duty to indemnify. It seems inherently inconsistent that courts universally afford attorney fees incurred to establish a contested duty to defend and yet, simultaneously, reject such an award incurred in coverage disputes brought to preserve or eviscerate the obligatory defense. As Appleman indicates, this notion appears nothing more than an a mere exercise in semantics. Accordingly, we hold that an insured is entitled to recover attorney fees, pursuant to the insurance exception to the American Rule, when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract, regardless of whether the insurer's duty to defend is at issue.

¶37 Unfortunately, the above holding does not conclude our inquiry into the issue presented. Virtually all of the above cited cases from other jurisdictions analyze and apply the respective holdings within the confines of a first-party insurance dispute. The authorities justify expansion of the insurance exception based on the insurer's contractual duty to the insured, the disparity of bargaining power between the parties, and the enhanced fiduciary

18

obligation running from the insurer to the insured. Appleman, as well as some of the above cases, couch availability of attorney fees for breaching a coverage obligation in terms of preserving the more universally protected duty to defend. Certainly, each of these rationales rings true in first-party insurance disputes. However, the analysis proves somewhat inapplicable in third-party disputes.

¶38 As a third-party dispute, this case does not present the traditional, contractual relationship associated with an insurer and insured. The Christensens did not purchase a contract of insurance from Mountain West. As such, Mountain West has not exploited an inherently unequal bargaining position or frustrated a justifiable expectation of insurance protection. The Christensens did not expend their own funds to obtain a previously bargained for benefit. Further, Mountain West owes no duty to the Christensens to defend them in any proceeding. In short, the Christensens point to no contractual corollary which would impose fiduciary obligations upon Mountain West.

¶39 Instead, the Christensens cite public policy reasons for extending the insurance exception to third-party beneficiaries. That is, the Christensens argue that the Legislature's promulgation of compulsory motor vehicle liability insurance evinces an intent to "extend the right to enforce the insurance contract to injured persons, not just insureds."

¶40 We do not take issue with the alleged prophylactic motives attendant with compulsory motor vehicle liability insurance. In fact, we have held that "it is clear that the mandatory liability insurance law seeks to protect members of the general public who are innocent victims of automobile accidents, and that § 61-6-301, MCA, was enacted for the benefit of

19

the public and not for the benefit of the insured." *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, ¶ 29, 300 Mont. 91, ¶ 29, 3 P.3d 626, ¶ 29 (citation omitted). However, to extend application of the insurance exception to third-party beneficiaries, individuals who are strangers to the insurance contract, would sanction attorney fee awards for simply demonstrating the existence of *any* insurance contract from which a third-party claimant successfully established coverage. Such a tenuous application of the insurance exception would undermine the exception's fundamental pretext and drive a stake into the heart of the American Rule. For the foregoing reasons, we decline to extend application of the insurance exception to third-party claimants.

¶41 Our holding with regard to third-party beneficiaries does not leave the Christensens without recourse in their attempt to recover their attorney fees. Today's holding simply precludes the Christensens from recovering the respective fees under the obligatory insurance exception. However, as we indicated above, § 27-8-313, MCA, authorizes a court to award attorney fees when the court, in its discretion, deems such an award "necessary or proper." *See Trustees of Indiana University*, ¶ 42. Accordingly, we remand this matter to the District Court for it to determine, pursuant to § 27-8-313, MCA, whether an award of attorney fees is "necessary or proper," and, if so, the amount of such award.

¶42 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

20

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice Terry N. Trieweiler concurring and dissenting.

¶43 I concur in the majority's conclusions that the Appellants did not waive the right to claim attorney fees; that an insurer should be liable for attorney fees when it breaches its duty to indemnify; and that, therefore, this Court's prior decision in *Yovish v. United Services Auto. Ass'n* (1990), 243 Mont. 284, 794 P.2d 682, should be reversed.

¶44 I dissent from the majority's conclusion that an exception to the American Rule regarding attorney fees should not be extended to third-party claimants to whom indemnity has been wrongfully denied by an insurer. While I agree with the Court's reasoning for extending the right to recover attorney fees to insureds who have had to incur attorney fees to enforce an insurer's contractual obligation to indemnify them, I fail to see how that reasoning is not equally applicable to third-party claimants who are wrongfully denied indemnification pursuant to the same contractual obligation.

¶45 As noted by the majority, the American Rule is simply the result of prior court decisions. It is not a statutory rule, nor is it a constitutional requirement. Therefore, as we stated in *Pence v. Fox* (1991), 248 Mont. 521, 524, 813 P.2d 429, 431, this Court has an obligation to reconsider that rule when justice requires. As pointed out in ¶ 14 of the majority Opinion, we have frequently done so where we concluded that justice required and we do so again today in the majority Opinion. However, the majority Opinion does not go far enough. Appleman states that:

> If the insurer can force [the insured] into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of

such litigation, the insured is actually no better off financially than if he had
never had the contract right mentioned above.

Appleman, 7C *Insurance Law and Practice* § 4691, at 282-83 (1979).

¶46    The majority cites as other reasons for its decision the disproportionate bargaining
position of the insurer and the futility of recovery when it must be at great expense. All these
considerations are equally applicable to injured third-party claimants who have a right to
indemnity pursuant to the insurer's contract with its insured, and, in some instances, based
upon the mandatory liability coverage laws of this state.

¶47    The majority, while correctly recognizing that common laws are meant to be modified
when justice so requires, then draws an artificial distinction between insureds and third
parties based on the contractual relationship of the insured. In doing so, the majority once
again genuflects at the alter of the American Rule. However, the distinction is unimportant
to the interest in equity which required the majority to consider another exception to the
American Rule in the first instance.

¶48    While it is true that the insurer has a contractual obligation to its insured, that same
contract, as well as Montana's public policy, give rise to an insurer's separate obligation to
injured third parties.

¶49    In the late 1970s, the legislature enacted mandatory liability protection provisions,
found at §§ 61-6-301 to 304, MCA. As the majority indicates, we have held that:

> [i]t is clear that the mandatory liability insurance law seeks to protect members
> of the general public who are innocent victims of automobile accidents, and
> that § 61-6-301, MCA, was enacted for the benefit of the public and not for
> the benefit of the insured.

*Watters v. Guaranty Nat. Ins. Co.,* 2000 MT 150, ¶ 29, 300 Mont. 91, ¶ 29, 3 P.3d 626, ¶ 29

(citing *Iowa Mut. Ins. Co. v. Davis* (1988), 231 Mont. 166, 170-71, 752 P.2d 166, 169).

¶50    Fifteen years ago, Justice John Sheehy poignantly described the obligations of an

insurer to an injured third-party claimant:

> More than ever, this case points up the necessity of this Court examining the duty of insurance companies toward third party claimants in the light of the mandatory insurance law. . . . [T]he purpose of the mandatory insurance law is to protect third party motorists on our highways. The duty of the insured to protect third party claimants and not harass them or refuse to pay their just claims is of greater import under mandatory insurance laws. The rights of the third party claimant now in automobile accident cases arise not merely through the insurance contract between the other motorist and his company but through the determination of the legislature that the general traveling public is to be protected. . . .

*Hart-Anderson v. Hauck* (1988), 230 Mont. 63, 79, 748 P.2d 937, 947 (Sheehy, J. dissenting).

¶51    Furthermore, the legislature has extended to third-party claimants an independent

cause of action for an insurer's unfair claims settlement practices without regard to the state's

mandatory liability provision. Section 33-18-242, MCA.

¶52    Insurers can easily avoid their statutory obligations as well as their contractual

obligation when injured third parties are compelled to expend large sums of money on

attorney fees and court costs to compel payment of what was owed in the first place. If

injured third parties are compelled to expend these costs without reimbursement when

coverage has been wrongfully denied, the statutory and contractual obligations referred to

by Justice Sheehy are meaningless.

24

¶53    In summary, I see no reason for distinguishing between the plight of insureds who are wrongfully denied indemnity pursuant to their insurance contract and injured third parties who are wrongfully denied indemnity in spite of the insurer's contract with its insured and, quite often, in violation of the insurer's statutory obligations.  Extending the right to be reimbursed for attorney fees to injured third parties would "eliminate yet another avenue through which the compensation of innocent automobile accident victims can be sidestepped." *See Iowa Mut. Ins. Co. v. Davis* (1988), 231 Mont. 166, 172, 752 P.2d 166, 170.

¶54    For these reasons, I concur in part and dissent in part from the majority Opinion.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson joins in the foregoing concurring and dissenting opinion.

/S/ JAMES C. NELSON