JUSTICE NELSON
¶48 concurs and dissents.
¶49 I concur in the result reached by the majority. I cannot, at this time, however, agree in the majority’s analysis with respect to § 27-8-313, MCA. I do not believe that this is an appropriate case to apply § 27-8-313, MCA, because, as the majority concedes, the Jones Estate failed to argue this section in the District Court.
¶50 Rather, based upon the record before us, I conclude that the University was acting as and should be deemed to be a de facto insurer. I.also conclude that the District Court erred, as a matter of law, in its determination that Indiana University was not an insurer. ¶51 In support of my conclusion the following facts are relevant. In 1987, the University began a self-insurance program by which it *229 retained the risk of its liability up to $1 million. The University also purchased a $15 million excess liability policy from TIG Insurance Company.
¶52 The University’s Risk Management Office administers the self-insurance fund, operating like an insurance company within the University system. The University departments make payments to the Risk Management Office. The money is used to pay claims and run the Risk Management Office.
¶53 The Risk Management Office employs claims adjusters who handle internal claims within the University and external claims against the University. The Risk Management Office runs a loss prevention program and purchases commercial insurance as needed. It also purchases and administers coverage for independent corporations and entities associated with the University.
¶54 Larry Stephens, the Director of the Risk Management Office, created a 230 page document styled “Indiana University, Operation of the Indiana University Self Insurance Fund.” This document contains policies which risk management adjusters use as guidelines to adjust claims. Additionally, Mr. Stephens drafted a five-page document styled “Indiana University Office of Risk Management, I.U. Self-Insurance Fund (IUSIF), Policy on Auto Coverage.” This document was reviewed and approved by Indiana University’s legal department and by a vice president. The University claimed that its adjusters used these documents as references in adjusting claims and in advising its insureds concerning coverage. The University claimed that these were only guidelines and did not bind the University in any manner.
¶55 According to COUCH ON INSURANCE 3D:
Whether a self-insured party is considered to be providing “insurance” depends in large part on (1) the purpose of the analysis, (2) whether the arrangement described as self-insurance is, in reality, an effort by the party to assume insurable risks or merely amounts to a “deductible,” and (3) whether the entity has made a conscious, calculated decision to estimate its risk and set aside sufficient funds to cover expected losses, or simply and somewhat offhandedly decided to save the cost of purchasing insurance by merely hoping that no losses would occur,
l Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, § 10:2 (1997).
¶56 I conclude that each of these three tests is satisfied based upon the record in this case. Indiana University was, indeed, acting as an insurer. The University clearly was assuming insurable risks in the *230 same way that an insurance company would, and it was conducting its insurance operations in the same way that a commercial insurance company would. It is also clear that the University made a conscious, calculated decision to estimate its risks and to set aside sufficient funds to cover those expected losses rather than simply and somewhat offhandedly attempt to save the cost of purchasing insurance by hoping that no losses would occur.
¶57 Since the University was a de facto insurer and since the question at issue in this appeal involves whether a first-party insurer’s improper refusal to indemnify will give rise to a claim for attorney fees and non-statutory costs, I conclude that the appropriate analytical construct in this case should be that adopted by this Court in Mountain West Farm Bureau Mut. Ins. Co. v. Brewer, 2003 MT 98, ¶¶ 8-36, 43-53, 315 Mont. 231, ¶¶ 8-36, 43-53, 69 P.3d 652, ¶¶ 8-36, 43-53 (Trieweiler, T, concurring and dissenting).
¶58 While I agree with the majority’s analysis of our prior case law as set forth in ¶¶ 25-29,1 nonetheless believe that the attorney fees and costs question in the case at bar is better analyzed and resolved under the insurance exception discussed in Mountain West and the concurrence, rather than on the basis of § 27-8-313, MCA-a statute and theory that was not argued in the District Court.
¶59 Accordingly, I concur in the result of our Opinion but not in our application of § 27-8-313, MCA.