Justice Dirk Sandefur, dissenting.
¶31 I dissent from the Majority holding that the four bodily injury coverages (hereinafter third-party liability coverages) under the Progressive motor vehicle liability policy (MVLP) at issue are not stackable here. The jump-off point for the Majority holding is a demonstrably erroneous construction of the introductory clause of § 33-23-203(1), MCA, thereby conveniently avoiding the troublesome operation and effect of the very statute enacted and repeatedly amended by the Legislature to allow insurers to preclude stacking of MVLP coverages. Oddly and illogically, the Majority holding allows insurers to preclude stacking outside of the statute enacted in response to our decisions invalidating such preclusions unless and until otherwise clearly provided by the Legislature.
¶32 The third and current version of § 33-23-203, MCA, reflects and is the product of the Legislature's unchanged intent and continuing effort to allow insurers to contractually preclude stacking of similar MVLP coverages. On each occasion in 1981, 1997, and 2007, the Legislature has acted at the urging of the insurance industry for the purported purpose of keeping insurance rates affordable to the public.[1] Even a cursory summary of the advent and evolution of the Legislature's anti-stacking efforts reveals the fallacy of the Majority analysis.
¶33 In a series of cases since 1979, we have consistently held that, as a matter of generally applicable contract law, policy provisions barring stacking of similar MVLP coverages purchased under one or more ***78 policies are void and unenforceable in violation of public policy. We based those decisions on the personal and portable nature of the coverages at issue and public policy (1) in favor of requiring insurers to provide MVLP coverages for which they have charged separate payment in full and (2) further favoring mandatory and optional motor vehicle liability coverages to compensate persons injured in motor vehicle accidents. In reaction to our early decisions, the 1981 Legislature first enacted § 33-23-203(1), MCA, to bar stacking of similar MVLP coverages available "unless [the policy] specifically provides otherwise. " (Emphasis added.) In 1997, in response to later court decisions noting the limited scope of the express language of the statute, the Legislature amended § 33-23-203(1), MCA, to more broadly bar stacking of all MVLP coverages regardless of whether available under single or multiple policies, whether or how the insurer charged separate premiums, or whether the coverages were mandatory or optional.[2]
¶34 However, in 2003, we held that the 1997 version of § 33-23-203(1), MCA, was unconstitutionally arbitrary on the ground that, by allowing MVLPs to bar stacking of MVLP coverages, it effectively allowed insurers to charge for coverages not actually provided, *1213 an effect not reasonably related to the statute's purpose of making and maintaining MVLP premiums reasonably affordable. Hardy v. Progressive Specialty Ins. Co. , 2003 MT 85, ¶ 38, 315 Mont. 107, 67 P.3d 892. In reaction to that decision, the 2007 Legislature amended § 33-23-203(1)(c), MCA, to allow MVLPs to preclude stacking as intended under the 1997 statute "if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the [insurance] commissioner." See 2007 Mont. Laws ch. 201, § 1 (HB 587). Based on our 2003 decision and the 2007 legislative history, the sole purpose of the amendment was to bolster the statute to withstand constitutional scrutiny and thereby effect the Legislature's purpose and intent to preclude stacking unless otherwise specifically authorized by the policy.
¶35 As critical here, the introductory clause to § 33-23-203(1), MCA ("[u]nless a [MVLP] specifically provides otherwise"), has remained unchanged since the original enactment in 1981. On two separate occasions prior to the 2007 amendment, we clearly and unequivocally construed the introductory clause to mean unless the policy specifically ***79 allows stacking . Christensen v. Mountain W. Farm Bureau Mut. Ins. Co. , 2000 MT 378, ¶ 39, 303 Mont. 493, 22 P.3d 624 ( § 33-23-203(1)(c)"prohibits stacking ... unless the policy at issue ... specifically permits 'stacking' "); Farmers All. Mut. Ins. Co. v. Holeman , 278 Mont. 274, 278, 924 P.2d 1315, 1317 (1996) ("it is clear" from the express language of § 33-23-203(1), MCA, "that 'stacking' is not allowed 'unless a [MVLP] specifically provide[s] otherwise' "). Nothing in the express language or legislative history of the 2007 amendment of § 33-23-203(1)(c) evinces any effect or intent to alter the clear and unequivocal original meaning and purpose of the introductory clause, certainly not as contorted by the Majority.
¶36 Correctly construing the introductory clause in accordance with its unchanged original meaning, and based on the express language and history of subsections (1)(a)-(c), § 33-23-203(1) has three basic components and functions. First, as it has since 1981, the introductory clause provides an exception to the main anti-stacking bar in the unlikely case that a MVLP may specifically allow stacking. Second, § 33-23-203(1)(a)-(b) specifies statutory limits of MVLP coverages for any one accident "under the policy insuring the motor vehicle involved" or when "the motor vehicle involved ... is not insured under a policy" at issue. Third, in conjunction with the limits specified in subsections (1)(a) and (1)(b), § 33-23-203(1)(c) allows MVLPs to preclude stacking if the insurer has filed the subject "premium rates" with the Montana Insurance Commissioner and "the premiums charged for" the coverages "actuarially reflect" the limitation of the coverages separately to specific vehicles. Bolstered to survive constitutional scrutiny by the 2007 amendment of subsection (1)(c), § 33-23-203(1) thus now effects the Legislature's current intent to allow insurers, upon compliance with subsection (1)(c), to preclude stacking free from pesky contract law attack on public policy grounds.[3]
¶37 Intended or not, Plaintiffs assert that the 2007 amendment altered the character of § 33-23-203(1) as merely an anti-stacking statute to further affirmatively permit stacking except upon insurer compliance with subsection (1)(c). However, nothing in the express language or 2007 legislative history supports that proposition. From inception to date, the sole purpose of § 33-23-203(1) has been to preclude stacking of MVLP coverages unless the policy specifically allows stacking. The sole purpose of the 2007 amendment of subsection ***80 (1)(c) was to bolster the statute to survive constitutional scrutiny in direct response to our decision in Hardy .
¶38 However, though not entirely the effect asserted by Plaintiffs, the limited language and narrow focus of the 2007 amendment nonetheless gave § 33-23-203(1) a new, peculiar effect. Construed together in context as an integrated whole, subsections (1)(a) and (1)(b) of § 33-23-203(1) are inseparable part and parcel with subsection (1)(c) and thus cannot be logically construed to preclude stacking absent compliance with subsection *1214 (1)(c). Consequently, absent compliance with subsection (1)(c), § 33-23-203(1) now neither affirmatively allows, nor precludes, stacking of MVLP coverages-it merely provides a safe harbor for anti-stacking provisions in compliance with subsection (1)(c). Absent compliance with subsection (1)(c), § 33-23-203(1) simply has no effect on MVLPs.[4]
¶39 To the extent not superseded by statute, generally applicable contract law governs whether anti-stacking provisions are valid and enforceable. See Hardy , ¶¶ 39-41. As a matter of generally applicable contract law, we have long held that anti-stacking provisions in UM, UIM, and Med-Pay[5] coverages are invalid and unenforceable based on ***81 their personal and portable nature and public policy (1) in favor of requiring insurers to provide similar coverages for which they have charged separate premiums and (2) further favoring mandatory and optional motor vehicle liability coverages to compensate persons injured in accidents. See , e.g. , St. Farm Mut. Auto. Ins. Co. v. Gibson , 2007 MT 153, ¶¶ 21-22, 337 Mont. 509, 163 P.3d 387 ; Dakota Fire Ins. Co. v. Oie , 1998 MT 288, ¶ 32, 291 Mont. 486, 968 P.2d 1126 ; Ruckdaschel v. St. Farm Mut. Auto. Ins. Co. , 285 Mont. 395, 397-99, 948 P.2d 700, 702-03 (1997) ; Bennett v. State Farm Mut. Auto. Ins. Co. , 261 Mont. 386, 388-89, 862 P.2d 1146, 1148 (1993) ; Chaffee v. U. S. Fid. & Guar. Co. , 181 Mont. 1, 6-7, 591 P.2d 1102, 1104-05 (1979). As that line of cases has developed, we have applied those principles regardless of who paid for the coverages or whether they were mandatory or optional.
¶40 While we have not previously had the opportunity to squarely consider their application to third-party liability coverage, the contract law principles upon which we have found anti-stacking provisions in UM, UIM, and Med-Pay coverages unenforceable are equally applicable to third-party liability coverages without material distinction. The fact that MVLPs tie third-party liability coverage to insured drivers of particular insured vehicles is not significant to stacking because the primary reason for tying third-party liability coverage to particular vehicles is not to keep costs down but, rather, the Legislature's public policy requirement and intent to protect the public from injury caused by the tortious conduct of others no matter who is driving a licensed motor vehicle. See §§ 61-6-103(1)(b), -301(1)(a), MCA.
¶41 Moreover, third-party liability coverage is no less personal and portable than first-party UM, UIM, and Med-Pay coverages. Mandatory motor vehicle liability insurance coverage goes with an insured driver regardless of whether driving an insured or uninsured vehicle. See § 61-6-103(2), MCA. As in the Progressive policy at issue, optional third-party liability coverages in excess of mandatory minimums similarly travel with an insured driver pursuant to "any vehicle" provisions or similar provisions typically in those policies. In pertinent part, the Progressive *1215 policy at issue defines an "insured person" as "you ... with respect to an accident arising out of the ownership ... or use of an auto. ..." The policy then defines a "covered auto" as "any auto ... shown on the declarations page for the coverages applicable to that auto ... [or] any additional auto ." (Emphasis added.)
¶42 Finally, regardless of the facts that third-party claimants are not ***82 parties to the insurance contract and that the coverage also protects the first-party insured, the other equally, if not more important purpose of third-party liability coverages is to protect the public from injury caused by the tortious conduct of others. Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer , 2003 MT 98, ¶¶ 38-41, 315 Mont. 231, 69 P.3d 652 ; Watters v. Guaranty Nat'l Ins. Co. , 2000 MT 150, ¶ 29, 300 Mont. 91, 3 P.3d 626, overruled on other grounds by Shilhanek v. D-2 Trucking , 2003 MT 122, ¶ 21, 315 MT 519, 70 P.3d 721. See also Brewer , ¶¶ 47-50 (Trieweiler J., dissenting); Bennett , 261 Mont. at 388-89, 862 P.2d at 1148. Consistent with that important purpose, third-party claimants have the statutory right to prompt, fair, and equitable compensation from insurers under third-party liability policies. See §§ 33-18-201(6), -242, MCA. Whether as a matter of statutory or contract law, third-party claimants are intended third-party beneficiaries of mandatory and optional third-party coverages regardless of not being party to the contract. See §§ 33-18-201(6), - 242, 61-6-103(1)(b), (2), -301(a), MCA ; Brewer , ¶¶ 38-41 ; Diaz v. Blue Cross & Blue Shield , 2011 MT 322, ¶¶ 18-22, 363 Mont. 151, 267 P.3d 756, abrogated on other grounds by Chipman v. Northwest Healthcare Corp. , 2012 MT 242, ¶¶ 47-52, 366 Mont. 450, 288 P.3d 193 ; Harman v. MIA Serv. Contracts , 260 Mont. 67, 72-73, 858 P.2d 19, 22-23 (1993) ; Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981). See also Brewer , ¶¶ 47-50 (Trieweiler J., dissenting). Consequently, as in regard to the first-party MVLP coverages, anti-stacking provisions pertaining to mandatory or optional third-party liability coverages are invalid and unenforceable in violation of public policy, except as the Legislature may hereafter otherwise provide.
¶43 Applied here, as acknowledged by the Majority, the Progressive third-party liability coverages at issue are MVLP coverages, as broadly defined by § 33-23-204(2), MCA, and referenced in § 33-23-203(1), MCA. Pursuant to the introductory clause of § 33-23-203(1), those coverages are subject to the anti-stacking provisions of § 33-23-203(1)(a)-(c), as applicable, unless the policy specifically allows stacking. The terms of the policy at issue do not specifically allow stacking of provided MVLP coverages. Thus, the coverages at issue are subject to § 33-23-203(1)(c), MCA.
¶44 Section 33-23-203(1)(c), MCA, requires only that an insurer file the subject MVLP premium rates and that those rates "actuarially reflect the limiting" of MVLP coverages separately to specific covered vehicles. Section 33-23-203(1)(c) does not currently require insurers to file any statement or proof showing the required actuarial correlation.
***83 Beyond genuine material dispute on the Rule 56 record, Progressive timely filed its subject MVLP "premium rates" with the Insurance Commissioner. However, genuine issues of material fact remain on the Rule 56 record as to whether those rates "actuarially reflect the limiting" of those coverages separately to specific covered vehicles.
¶45 Contrary to the Majority holding, the District Court erroneously granted summary judgment that the third-party liability coverages at issue are not stackable here. I would thus reverse and remand for further proceedings to determine whether the premium rates for the coverages at issue "actuarially reflect the limiting" of the coverages separately to specific covered vehicles as contemplated by § 33-23-203(1)(c), MCA. If so, I would instruct the District Court to re-enter summary judgment in favor of Progressive. If not, I would instruct the Court to enter summary judgment in favor of the Plaintiffs and proceed accordingly.
¶46 I dissent.
Justice Ingrid Gustafson joins in the dissenting Opinion of Justice Sandefur.

It makes no difference whether the Warrens assign their first-party rights under the insurance contract to Cross, as Cross could only enforce the terms of the policy that prevent stacking of liability coverages. Liability coverage is connected to a specific vehicle and does not become personal and portable through an assignment.

See 1997 Mont. Laws ch. 495, §§ 1-2.

Whether the 2007 amendment to subsection (1)(c) is indeed sufficient for § 33-23-203(1), MCA, to survive constitutional scrutiny is not at issue in this case.

The Majority attempts to further bolster its reasoning by citation to § 33-23-203(1), MCA (MVLP "may also provide for other reasonable limitations, exclusions, reductions of coverage ... to prevent the adding together of ... coverage limits in one policy or from more than one policy issued by the same company" (emphasis added)). Under the plain meaning and grammatical usage of § 33-23-203(2) in context with subsection (1), subsection (2) merely authorizes various referenced types of additional restrictions other than the foregoing anti-stacking provision in subsection (1) and in regard to which the word "other" refers. Moreover, the Legislature enacted the language in § 33-23-203(2) upon which the Majority now relies (i.e., a "policy may also provide for other reasonable limitations, exclusions, reductions of coverage ... designed ... to prevent the adding together of insurance coverage limits in one policy or from more than one policy issued by the same company ") as part of the 1997 version of § 33-23-203, see 1997 Mont. Laws ch. 495 (SB 44), which we subsequently held was unconstitutional without limitation in violation of Article II, Section 17 of the Montana Constitution (substantive due process) as not rationally related to the legislative objective of keeping motor vehicle insurance affordable. Hardy , ¶¶ 34-38. Consequently, in the wake of Hardy and given the purpose of the 2007 amendment to remedy the cited constitutional defect, it is preposterous to assert that language previously deemed unconstitutional as a stacking bar can now be an independent source of statutory authority to that same end outside and away from the very statutory language added by the 2007 Legislature (§ 33-23-203(1)(c) (2007 Mont. Laws ch. 201 (HB 587))) to remedy the constitutional defect.

As referenced herein, "UM" means "uninsured motorist coverage," "UIM" means "underinsured motorist coverage," and "Med-Pay" means "medical expense coverage."